ORIGINAL

ANTHONY L. HALL, ESQ., NV Bar #005977
ahall@littler.com
LITTLER MENDELSON
50 West Liberty Street, Ste. 400
Reno, Nevada 89501
Telephone: 775-348-4888
Fax No.:   775-562-8098

Attorneys for Defendant
GREGORY KRAUSE, CAROLYN ROBINSON and
REGIONAL TRANSPORTATION COMMISSION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GERALDINE McFADDEN, | Case No.  CV-N-04-0741-ECR-VPC |
| Plaintiff, | |
| vs. | **DEFENDANTS GREGORY KRAUSE, CAROLYN ROBINSON AND REGIONAL TRANSPORTATION COMMISSIONS' PARTIAL MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT** |
| GREGORY KRAUSE, NANCY PEARL, CAROLYN ROBINSON, and REGIONAL TRANSPORTATION COMMISSION, | |
| Defendants. | |

Defendants **GREGORY KRAUSE ("Krause"), CAROLYN ROBINSON ("Robinson"), and REGIONAL TRANSPORTATION COMMITTEE ("RTC")** (collectively referred to as "Defendants"), by through their attorneys file the following Partial Motion to Dismiss seeking partial dismissal of Plaintiff's Complaint, and Motion for More Definite Statement. This Motion is based upon Rule 12(b)(6), Rule 12(e), the following points and authorities, all other pleadings and papers filed in this matter, and any oral argument permitted by the Court.

## INTRODUCTION

Plaintiff's Complaint purports to state causes of action under various federal and Nevada statutory authority. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants hereby move this Court for an Order dismissing Plaintiff's First, Ninth, Tenth, Eleventh and Twelfth causes of action, which allege claims for: violation of rights to procedural and substantive due process under

TTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007

42 U.S.C. 1983, defamation of character, intentional infliction of emotional distress, negligent hiring, training and supervision, and violation of NRS 613.075. These claims fail to state causes of action for which relief can be granted as a matter of law, under FRCP 12(b)(6). Additionally, Defendants move this Court for an Order dismissing Plaintiff's Sixth, Seventh and Eighth causes of action, which allege claims for: violation of ADEA and ADA combined, violation of Title VII and ADA combined, and violation of ADA, ADEA, and Title VII combined. These claims are duplicative of Plaintiff's Third, Fourth and Fifth causes of action, and should therefore be dismissed. Finally, Defendants hereby move this Court for an Order requesting a more definite statement of Plaintiff's Second, Fourteenth and Fifteenth causes of action. These claims fail to clearly establish the statutory authority on which they are based, and are therefore ambiguous under FRCP 12(e).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STANDARD OF REVIEW

#### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). A motion to dismiss should be granted where the complaint fails to allege sufficient facts to constitute a cognizable cause of action or legal theory of recovery. FED. R. CIV. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732, (9th Cir.2001). Furthermore, a complaint is subject to dismissal if it lacks allegations regarding an element necessary to obtain relief. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (citing *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Here, Plaintiff's Complaint contains numerous causes of action that fail to state a claim upon which relief can be granted, and those causes of action should be dismissed.

#### B.   Motion for More Definite Statement

Under Federal Rules of Civil Procedure 12(e), "if a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A Motion for More Definite Statement should be granted if a Plaintiff's complaint "does not provide defendants

TTLER MENDELSON
60 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007                                    2.

1   with a fair opportunity to frame a responsive pleading." *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th

2   Cir., 1996). Here, Plaintiff's Complaint contains numerous causes of action that fail to clearly

3   establish the statutory basis on which they are made, and Plaintiff should be required to provide a

4   more definite statement of those claims.

5   **III.   ARGUMENT**

6   **A.   Plaintiff's First Cause of Action under 42 U.S.C. § 1983 should be dismissed as a Matter of Law.**

7

8   Plaintiff alleges in her First Cause of Action that Defendant RTC, Defendant Krause and

9   Defendant Robinson, deprived her Fourteenth Amendment rights to procedural due process and

10  substantive due process, and thereby violated 42 U.S.C. § 1983. Complaint at ¶¶ 62-63. Plaintiff

11  alleges specifically that she was denied "the right to notice and an appropriate hearing" in violation

12  of her procedural due process rights. However, while Plaintiff has claimed that her procedural due

13  process rights have been violated, she has failed to allege facts that could establish that either RTC

14  or its employees, Defendant Krause and Defendant Robinson, interfered with the appeals process as

15  outlined by RTC in its personnel rules/employee handbook. Therefore, Plaintiff's First Cause of

16  Action should be dismissed as a matter of law.

17  In order state a claim for a deprivation of procedural Due Process, a plaintiff must show: (1)

18  that she possessed a constitutionally protected property interest; and (2) that she was deprived of that

19  interest without due process of law. *See, Cleveland Board of Education v. Loudermill*, 470 U.S. 532

20  (1985); *See also, Baker v. McCollan*, 443 U.S. 137, 145 (1979). Due process requires that "a

21  deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate

22  to the nature of the case." *Cleveland Board of Education* at 542.

23  Plaintiff's Claim that Defendants violated her Fourteenth Amendment rights to procedural

24  due process is based on her factual allegations that Defendants did not give Plaintiff notice, and did

25  not grant an appropriate hearing. However, Plaintiff has failed to allege facts that establish that

26  Defendants actually denied Plaintiff the opportunity to undertake the appeals process as determined

27  by RTC.

28  In its personnel rules/employee handbook, Defendant RTC has established a process for

appeals for its employee who are disciplined, discharged or demoted. *See* Regional Transportation Commission Personnel Rules, "Appeals and Hearings", **Attached as Exhibit A, P-61.**   In its guidelines, RTC establishes that an employee who is disciplined, demoted or discharged   may, within 7 days of notice of the action, appeal the action in writing to the Department Director.   After this notice, RTC establishes that the Department Director will investigate the circumstances of the action, and issue a written decision.   Subsequent to this decision, RTC policies establish that if the employee is not satisfied with the Department Director's decision, he or she may appeal to the Executive Director within 7 days of the decision, who will undertake an investigation.   If the employee is not satisfied with the decision rendered by the Executive Director, he or she may appeal to an external arbitrator.

With regard to Defendants RTC, Krause and Robinson, Plaintiff has failed to allege that any Defendant interfered with or denied Plaintiff's attempts to undertake the appeals process as established by RTC in its personnel rules/employee handbook.   Plaintiff fails to allege any facts whatsoever that establish that either RTC, Krause or Robinson had any involvement in alleged denial of "notice" or "right to hearing" set forth in **Exhibit A**.   Furthermore, Plaintiff fails to allege that she *attempted* to undertake any of the mechanisms of the appeals process outlined by RTC in its personnel rules/employee handbook.   Plaintiff does not allege that she appealed to the Department Director in writing.   Plaintiff does not allege that she appealed any decision by the Department Director to the Executive Director.   Plaintiff does not allege that she appealed any decision by the Executive Director to an external arbitrator.   As Plaintiff has failed to allege that she attempted to pursue the appeals process established by her employer, and failed to allege that any Defendant interfered with these attempts, Plaintiff's claim for deprivation of procedural due process under 42 U.S.C. § 1983 should be dismissed as a matter of law.

Plaintiff has additionally alleged that Defendants deprived her rights to *substantive* due process and thereby violated 42 U.S.C. 1983.   Substantive due process has two components: substantive due process simpliciter, and incorporated substantive due process.   Plaintiff has failed to allege facts that would establish a claim for either component.

In order to state a claim for violation of substantive due process simpliciter, Plaintiff must

ITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775 348 4888

Firmwide:65043409.1 021510.2007                                                    4.

1   demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a

2   constitutional sense." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 128 (1992); *Rymer v.*

3   *Douglas County*, 764 F.2d 796, 801 (11th Cir. 1985).   In *Collins*, the Supreme Court held that a

4   city's alleged failure to train its employees, or to warn them about known risks of harm regarding the

5   dangers of working in sewers, was *not* an omission that could properly be characterized as arbitrary,

6   or conscience-shocking, in a constitutional sense, and was therefore not a violation of substantive

7   due process simpliciter.  The Court, quoting *Daniels v. Williams*, 474 U.S. 327 (1986) stated that

8   "because the Due Process Clause 'does not purport to supplant traditional tort law in laying down

9   rules of conduct to regulate liability for injuries that attend living together in society,' we have

10  previously rejected claims that the Due Process Clause should be interpreted to impose federal duties

11  that are analogous to those traditionally imposed by state tort law." *Id*.  Furthermore, the Court held

12  that application of substantive due process simpliciter was narrow, stating that "as a general matter,

13  the Court has always been reluctant to expand the concept of substantive due process because the

14  guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Id.*

15  at 125.

16          With regard to incorporated substantive due process, the plaintiff may state a claim by

17  proving a violation of one of the Bill of Rights.   The Supreme Court has held that one of the

18  substantive elements of the Due Process Clause protects those rights that are fundamental and has

19  likewise held that they apply to the states through the "liberty" interest of the Due Process Clause.

20  See, *Palko v. Connecticut*, 302 U.S. 319 (1937).   In *Mapp v. Ohio*, 367 U.S. 643 (1961), the

21  Supreme Court held that the Fourth Amendment proscription against unreasonable searches and

22  seizures applies to the States.

23          In her Complaint, Plaintiff fails to allege facts which would establish a claim for either

24  substantive due process simpliciter, or incorporated substantive due process.  First, Plaintiff does not

25  allege any conduct on the part of the Defendants RTC, Robins or Krause that is "arbitrary, or

26  conscience shocking, in a constitutional sense."

27          Plaintiff also fails to allege any facts that would establish a Fourth Amendment violation by

28  Defendants, and therefore a violation of incorporated substantive due process.  The Fourth

ITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007                     5.

Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In her Complaint, Plaintiff does not allege any facts that involve an unreasonable search or seizure by Defendants. Plaintiffs' claim of violation of one of her fundamental rights is entirely unrelated to the claim she has made, and simply does not relate to the alleged facts. Therefore, because Plaintiff has failed to allege sufficient facts to establish a deprivation of substantive due process rights, under the category of either substantive due process simpliciter, or incorporated substantive due process, her First Cause of Action should be dismissed as a matter of law.

**B.    Plaintiff's Second Cause of Action must be stated more definitely, as it fails to clearly state the statutory basis on which the claim is based.**

Plaintiff alleges in her Second Cause of Action that the Defendants "recklessly violated the known right of the plaintiff to freedom of religion." Complaint at ¶64. However, Plaintiff fails to allege the statutory basis on which this claim is made. Plaintiff's claim could be based on either a theory of deprivation of freedom of religious expression under the First Amendment, or on a theory of religious discrimination under Title VII. Therefore, under Fed. Rules of Civ. Pro. 12(e), defendants move for a more definite statement from Plaintiff with regard to this claim, one which outlines the specific statutory basis on which Plaintiff's allegation is based.

**C.    Plaintiff's Sixth, Seventh and Eighth Causes of Action should be dismissed as they are duplicative of Plaintiff's Third, Fourth and Fifth Causes of Action.**

Plaintiff alleges in her Sixth Cause of Action that Defendant RTC violated her rights "under the ADEA and the ADA combined." See Complaint at ¶75. Plaintiff alleges in her Seventh Cause of Action that Defendant RTC violated her rights "under Title VII and the ADA combined." See Id. at ¶77. Plaintiff alleges in her Eighth Cause of Action that Defendant RTC violated her rights "under Title VII, the ADEA and the ADA combined." Id. at ¶79.

The allegations set forth in these claims are duplicative of those set forth in Plaintiff's Third, Fourth and Fifth Causes of Action. Plaintiff's attempt to assert separate "combined" claims for these

ITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4868

Firmwide:65043409.1 021510.2007                          6.

1    causes of action is simply redundant, and has no basis in law. Therefore, Plaintiff's Sixth, Seventh

2    and Eighth causes of action should be dismissed.

3        **D.**    **Plaintiff's Ninth Cause of Action for Defamation of Character should be dismissed as a Matter of Law.**

4

5           In her Ninth Cause of Action, Plaintiff alleges that all Defendants, including Defendant RTC,

6    Defendant Krause and Defendant Robinson, intentionally defamed her character. Complaint at ¶81.

7    In Nevada, in order to establish a case of defamation, a plaintiff must prove 1) a false and

8    defamatory statement by defendant concerning the plaintiff; 2) an unprivileged publication to a third

9    person; 3) fault, amounting to at least negligence; and 4) actual or presumed damages. See, *Simpson*

10   *v. Mars Inc.*, 929 P.2d 966, 967 (Nev. 1997). See also, *Chowdry v. NLVH, Inc.* 851 P.2d 459 (Nev.

11   1993).

12          In her Complaint, Plaintiff fails to allege a single fact that would establish a prima facie case

13   for defamation against Defendant RTC, Defendant Krause or Defendant Robinson.    Plaintiff's

14   Complaint describes no false and defamatory statement made by any of these Defendants concerning

15   the Plaintiff. The Complaint contains no allegation of a communication of any such statement to a

16   third party. In fact, Plaintiff's only factual allegation reasonably related to this claim is that

17   Defendant RTC and Defendant Robinson refused to send Plaintiff's "dossier", upon Plaintiff's

18   request, to the Washoe County Sheriff's Department. Complaint at ¶57.

19          Therefore, Plaintiff's sole factual allegation related to this cause of action involves an alleged

20   *failure* to make a statement, and an alleged *lack of publication* to a third party.    These facts as

21   alleged by Plaintiff are clearly insufficient to support a prima for defamation under the standard

22   articulated by Nevada courts. Therefore, Plaintiff's claims for defamation against Defendant RTC,

23   Defendant Krause, and Defendant Robinson should be dismissed as a matter of law.

24       **E.**    **Plaintiff's Tenth Cause of Action for Intentional Infliction of Emotional Distress should be dismissed as a Matter of Law.**

25

26          In her Tenth Cause of Action, Plaintiff alleges that all Defendants, including Defendant RTC,

27   Defendant Krause and Defendant Robinson, intentionally inflicted severe emotional distress upon

28   her. With regard to Defendant Krause, Plaintiff fails to allege in her complaint sufficient facts which

LITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV  89501
775.348.4888

Firmwide:65043409.1 021510.2007

7.

1    state a claim for intentional infliction of emotional distress. Plaintiff alleges that Defendant Krause

2    is the Executive Director of RTC. Complaint at ¶5. Plaintiff alleges that Defendant Krause "wanted,

3    for reasons relating to [Plaintiff's] age, to fire her from government employment..." *Id.* at ¶31.

4    Plaintiff alleges that Defendant Krause refused to alter an allegedly unwarranted negative

5    performance appraisal of Plaintiff. *Id.* at ¶43.   Plaintiff alleges that Defendant Krause tried to

6    prevent her from returning to work after Plaintiff was allegedly "ordered into a mental health

7    facility" on May 30, 2003. *Id.* at ¶38. Plaintiff alleges that Defendant Krause responded to her in

8    writing after an alleged assault by Pearl, but did not investigate the incident. Id. at ¶49.   Plaintiff

9    alleges that Defendant Krause was aware of criticism and harassment by RTC employees, directed at

10   Plaintiff. *Id.* at ¶53. Finally, Plaintiff alleges that Defendant Krause terminated her employment.

11   *Id.* at ¶39.

12        With regard to Defendant Robinson, Plaintiff fails to allege in her Complaint sufficient facts

13   to state a claim for intentional infliction of emotional distress. Plaintiff alleges that Defendant

14   Robinson is Head of Human Resources of RTC. *Id.* at ¶6. Plaintiff alleges that she was taken by

15   Defendant Robinson to a mental health facility on May 30, 2003. *Id.* at ¶35. Plaintiff alleges that

16   Defendant Robinson subsequently tried to prevent her from returning to work. *Id.* at ¶38. Plaintiff

17   alleges that beginning on March 8, 2003, Defendant Robinson regarded her as disabled, and

18   therefore committed the acts of harassment, unequal treatment, unwarranted poor performance

19   appraisal and termination. *Id.* at ¶55.  Finally, Plaintiff alleges that Defendant Robinson refused to

20   send a written dossier regarding Plaintiff to the Washoe Sheriff's Department. *Id.* at ¶57.

21        In Nevada, to state a claim for intentional infliction of emotional distress, a plaintiff must

22   show that 1) the defendant's conduct was extreme and outrageous; 2) the defendant intended to

23   cause the plaintiff emotional distress or demonstrated reckless disregard for the probability of

24   causing emotional distress; 3) the plaintiff actually suffered severe or extreme emotional distress and

25   4) the defendant's conduct proximately caused the distress. *See, Nelson v. City of Las Vegas*, 665

26   P.2d 1141 (Nev. 1983). *See also, Star v. Rabello*, 625 P.2d 90 (Nev. 1981).

27        Plaintiff has failed, in her Complaint, to allege *any* facts which establish that Defendant

28   Krause, Defendant Robinson, or Defendant RTC engaged in extreme or outrageous conduct.

ITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007                                    8.

Nevada courts have routinely reserved liability for the tort of intentional infliction of emotional distress for rare cases where the defendant's conduct goes "beyond all possible bounds of decency, is atrocious and utterly intolerable." *See, Alam v. Reno Hilton Corp.,* 819 F. Supp 905, 911 (D. Nev. 1993). *See also, Hirschorn v. Sizzler Restaurants, Int'l,* 913 F. Supp. 1393, 1401 (D. Nev. 1995) (termination of employee and comments from supervisor regarding employee's medical condition do *not* constitute extreme and outrageous conduct).

For instance, in *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 443, 956 P.2d 1382, 1384 (1998), the Nevada Supreme Court dismissed an IIED claim on summary judgment where the terminated employee claimed that the employer disclosed the fact that he was in a drug rehabilitation program to co-workers subjecting him to taunting and jeering in violation of a written policy that such information would be kept in confidence. The court found no extreme and outrageous conduct under these facts. *See id.*

In *Calendore v. Clark County Sanitation Dist.,* 752 F. Supp. 956, 962-63 (D. Nev. 1990), under similar facts, the district court found that alleged retaliatory actions taken by the plaintiff's employer *did not* constitute extreme and outrageous conduct. *See, Calendore v. Clark County Sanitation Dist.,* 752 F. Supp. 956, 962-63 (D. Nev. 1990). There, the Plaintiff alleged that she was given a harder workload and inferior office equipment in retaliation for her complaints that a younger female employee was receiving preferential treatment because she was having an affair with their boss. *See id.* at 958. In granting defendant's motion for summary judgment, the court noted that while taken in a light most favorable to the plaintiff these actions *may* have established an abuse of position, they were "not so extreme and outrageous as to establish [a cause of action for IIED]." *See id.* at 962-963.

All of the acts by Defendant Krause alleged by Plaintiff consist of common managerial decisions made in the scope of Krause's employment. If such conduct was classified as extreme and outrageous, virtually any conduct by a manager or supervisor that did not please an employee would be considered grounds for a claim of intentional infliction of emotional distress.

Furthermore, in Nevada, it is well settled that the act of discharging an employee does not, by itself, rise to the level of extreme and outrageous conduct required for an emotional distress claim.

LITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007                    9.

1    *Alam* at 911. Also, as this Court recognized in *Jesperson v. Harrah's Operating Co., Inc.,* 280 F.

2    Supp.2d 1189, 1194 (D. Nev. 2002), "[t]ermination of employees, even in the context of a

3    discriminatory policy, does not in itself amount to extreme and outrageous conduct." Therefore,

4    termination of Plaintiff's employment by Defendant Krause and Defendant RTC cannot be

5    considered extreme and outrageous conduct, and the claim against Defendants for intentional

6    infliction of emotional distress should be dismissed.

7        Additionally Plaintiff has failed, in her Complaint, to allege any facts which establish that she

8    suffered severe or extreme emotional distress. According to the Nevada Supreme Court, the burden

9    of proof for showing that a plaintiff has suffered emotional distress sufficient to result in liability on

10   a claim for intentional infliction of emotional distress is demonstrably higher than that required to

11   recover for emotional distress as a component of damages in relation to liability for a separate tort

12   claim. *See, Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000) ("the standard of proof

13   for emotional distress damages arising from assault and battery is not as stringent as the standard of

14   proof requirement for bare claims of intentional or negligent infliction of emotional distress").

15   Under established Nevada case law, in order for a plaintiff to establish that he suffered severe

16   emotional distress in the absence of direct physical impact and to prove liability for a specific tort

17   claim for emotional distress, the plaintiff must present "proof of 'serious emotional distress' causing

18   physical injury or illness." *See, Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 448, 956 P.2d 1382,

19   1387 (1998). Nowhere in her Complaint does Plaintiff allege that she suffered severe emotional

20   distress that was the cause of any physical injury or illness.

21       Plaintiff has failed, in her Complaint, to allege any acts by Defendants that constitute

22   "extreme and outrageous" conduct. Furthermore, Plaintiff has failed to allege that any severe

23   emotional distress that she allegedly suffered because of the actions of Defendants resulted in

24   physical injury or illness. The facts as alleged by Plaintiff are insufficient to establish a prima facie

25   claim of intentional infliction of emotional distress. Therefore, Plaintiff's Tenth Cause of Action

26   against Defendant RTC, Defendant Krause and Defendant Robinson should be dismissed as a matter

27   of law.

28

LITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021510.2007                            10.

**F.** **Plaintiff's Eleventh Cause of Action for Negligent Hiring, Training and Supervision should be dismissed as a Matter of Law.**

**1. Negligent Hiring**

In her Complaint, Plaintiff alleges that Defendant RTC breached a duty of care to her by "negligently fail[ing] to use due care in the hiring, training and supervision of [Nancy] Pearl." Complaint at ¶87.  Plaintiff's allegation clearly fails to meet the minimum requirements to state a cause of action for negligent hiring in Nevada, because Plaintiff has not alleged that Defendant employed an employee with known dangerous propensities that caused her injury.

To support such a cause of action for negligent hiring, a plaintiff must establish that defendant knew or should have known that it hired a potentially dangerous employee, that the employee committed a tort on the plaintiff and that the plaintiff suffered physical injury as a result. The Nevada Supreme Court addressed such claims in *Hall v. SSF, Inc.*: "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check or a potential employee to ensure that the employee is fit for the position. (Citation omitted). An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of *that employee's dangerous propensities*." *Hall v. SSF, Inc.*, 112 Nev. 1384, 1392, 930 P.2d 94, 98 (1996). (Emphasis added).  The Court in *Hall* also cited to authority in other jurisdictions that prefaced liability for an employer's negligent hiring of an employee on the theory that the employer knew or should have known that a potential employee posed a physical threat to others: "*Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1321 (Colo.1992) (stating that 'Liability [for negligent hiring] is predicated on the employer's hiring of a person under circumstances antecedently giving the employer reason to believe that the person, by reason of some attribute of character of prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities'); *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn.Ct.App.1993) (stating that negligent hiring liability is imposed 'when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct')." *Id.* at 1392. [1]

---

[1] See also *McCormick v. West Virginia Dept. of Public Safety*, 202 W.Va. 189, 503 S.E.2d 502

TTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4889

1    Plaintiff's Complaint alleges no facts which establish that Defendant RTC knew or should

2    have known that Pearl was a potentially dangerous employee at the time it hired her. In fact,

3    Plaintiff's Complaint alleges no fact whatsoever with regard to Defendant RTC's decision to hire

4    Pearl, or the process Defendant undertook in hiring Pearl. As Plaintiff's Complaint is devoid of any

5    allegations of facts necessary for the claim of negligent hiring, it should be dismissed as a matter of

6    law.

7    **2. Negligent Supervision and Training**

8    Plaintiff alleges in her Complaint that Defendant RTC was negligent in its supervision and

9    training of Nancy Pearl. Complaint at ¶87. A necessary element to support a claim of negligent

10   supervision and training is that the plaintiff be physically injured by the employee. Indeed, physical

11   injury to the plaintiff is the *sine qua non* of the tort of negligent training or supervision. In *Graves v.*

12   *Iowa Lakes Community College*, 639 N.W.2d 22 (Iowa 2002), the Iowa Supreme Court held that a

13   claim for negligent supervision did not extend to cases "where there are no physical injuries." The

14   Court cited to numerous other authorities: *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442

15   (Minn. Ct. App. 1996) (allowing recovery by fellow employee for negligent supervision but only for

16   physical injuries); *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1157 (D.

17   Minn. 1997) (no recovery for negligent supervision based solely on economic loss); *Sibley v. Kaiser*

18   *Found. Health Plan*, 998 S.W.2d 399, 403–04 (Tex. Ct. App. 1999) (recovery for negligent

19   supervision extends only to physical injuries).

20   The sole allegation of physical injury alleged by Plaintiff involves her allegation of physical

21   assault and battery by Pearl on June 30, 2003. Complaint at ¶46. Any other subsequent actions made

22   by Pearl towards Plaintiff, such as alleged discrimination, harassment and wrongful termination, are

23   simply inapposite to the analysis. *See, Leidig v. Honeywell*, 850 F.Supp. 796 (D.Min.1994) (holding

24   that an employee could not support a negligent hiring cause of action simply by alleging that he was

25   discriminated against by other employees because of his age). *See also*, *Peck v. NGM Ins. Co.*, 1995

26

27   (1998); "Did the employer conduct a reasonable investigation into the employee's background vis a
     vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or

28   third parties that could result from the conduct of an unfit employee? Should the employer have
     reasonably foreseen the risk caused by hiring or retaining an unfit person?"

TTLER MENDELSON
60 West Liberty Street
Ste. 400
Reno, NV 89501
775 348 4888

1   U.S. Dist. LEXIS 8891 (D.N.H., 1995) (court refused to recognize claim for negligent supervision

2   based on failure to prevent employees from unreasonably terminating other employees or

3   discriminating against other employees). *See also, Bruchas v. Preventive Care, Inc.,* 553 N.W.2d

4   440, 442 (Minn. Ct. App. 1996) (allowing recovery by fellow employee for negligent supervision

5   but only for physical injuries)   Therefore, any analysis of Defendant RTC's alleged negligent

6   supervision and training of Pearl *must* use the date of the alleged assault and battery by Pearl against

7   Plaintiff, June 30, 2003, as a baseline.

8         To support a cause of action for negligent supervision and training of an employee, a plaintiff

9   must establish that 1) the defendant became aware, or should have become aware, of problems with

10  that employee that indicate unfitness, 2) the defendant failed to take further action, such as

11  investigating, disciplining, and/or discharging the employee, and 3) that employee *subsequently*

12  injures the plaintiff. *See, Virginia G. v. ABC Unified Sch. Dist.,* 15 Cal. App. 4th 1853.  See also

13  Foster v. The Loft, Inc., 526 N.E.2d 1309 (Mass. App. Ct. 1988). *See also, Perkins v. Spivey,* 911

14  F.2d 22 (8th Cir. 1990).

15        At no point in her Complaint does Plaintiff allege that Defendant RTC became aware or

16  should have become aware of facts concerning Pearl that indicated unfitness, or that Defendant RTC

17  failed to take action in response to any indication of unfitness with regard to Pearl, prior to June 30,

18  2003. Plaintiff alleges that after the alleged assault on that date, she documented the incident to

19  Krause. Complaint at ¶49. However, Plaintiff makes no allegation that prior to this alleged incident,

20  Defendant RTC was aware of or should have been aware of any transgressions by Pearl in the course

21  of her employment that indicated violent tendencies.  Defendant fails to allege that she, or any other

22  employee, reported to Defendant RTC any incident or behavior involving Pearl that indicated violent

23  tendencies, prior to June 30, 2003.

24        Plaintiff has alleged no facts to establish even a prima facie case that Defendant breached a

25  cognizable duty to Plaintiff in the training or supervision of Pearl.  Plaintiff makes no allegations

26  that Defendant RTC was aware or should have become aware of any actions by Pearl that would

27  have indicated her unfitness, prior to the sole alleged incident of physical injury, June 30, 2003.

28  Consequently, Plaintiff cannot and does not allege any facts that establish that Defendant RTC failed

ITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4868

Firmwide:65043409.1 021510.2007                    13.

to take appropriate remedial action with regard to Pearl in response to an indication of her unfitness, prior to June 30, 2003.  Therefore, Plaintiff's claims of negligent training and supervision should be dismissed as a matter of law.

**G.**     **Plaintiff's Twelfth Cause of Action fails as a Matter of Law, as NRS 613.075 does not allow for a Private Cause of Action.**

Plaintiff alleges that she requested her personnel file from Defendant RTC, but did not receive it in timely fashion, in violation of NRS 613.075.  Complaint at ¶ 88.  NRS 613.075 provides that "upon termination of employment, an employer shall allow an employee to inspect his records of employment within 60 days after his termination of employment and shall, if requested by that former employee within that period, furnish him with a copy of those records." NRS 613.075 (4).  However, NRS 613.075 does not allow for a private cause of action should there be a failure to comply.  When there is a question as to enforcement of  Nevada's labor laws, the legislature designated the majority of that power to the labor commissioner.

NRS 607.160 (1)(a) states that the labor commissioner "shall enforce all labor laws of the State of Nevada the enforcement of which is not specifically and exclusively vested in any other officer, board or commission."   Therefore, unless it is otherwise set forth in a statute, as contemplated by the legislature, private causes of action are not allowed.  NRS 613.075 does not specifically set forth a private cause of action for violations nor does it vest enforcement of the statute in any body other than the Labor Commissioner. In analyzing the extent of the Labor Commissioner's duties to otherwise enforce the employment statutes, and the limited number of private causes of action available under the employment statutes, it is clear that the legislature intended that only a public cause of action be allowed.

The legislature created a private cause of action in NRS Chapters 608 and 613 in four limited circumstances: 1) an action by an employee to recover the difference between minimum wage and the amount paid (NRS 608.260); 2) recovery of attorney's fees in an action for recovery of wages (NRS 608.140); 3) complaints concerning unlawful employment practices based on discrimination, after they have been filed with the Nevada equal rights commission (NRS 613.405); and 4) violation of NRS 613.333: "Discrimination for lawful use of any product outside premises of employer which

TTLER MENDELSON
60 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888

Firmwide:65043409.1 021519.2007                                     14.

1  does not adversely affect job performance or safety of other employees."

2      NRS 613.075 does not contain any such language. The labor commissioner (*see* NRS

3  613.200, 613.500) and/or attorney general (*see* NRS 613.050, 613.160) are the only entities that have

4  been granted the power to enforce the remaining provisions.  It is clear that the legislature did not

5  intend to create a private cause of action under NRS 613.075 when private causes of action are

6  otherwise clearly delineated in other sections of Chapters 608 and 613.

7   **1.    Under the maxim *"expressio unius est exclusio alterius,"* this Court should not
8       expand the remedy under NRS Chapter 613 when legislation provides a
        particular remedy.**

9

10      The legal maxim *"expressio unius est exclusio alterius,"* literally meaning "the expression of

11  one thing is the exclusion of another," provides guidance for determining whether an implied private

12  cause of action may be inferred from a statute.  As set forth by this Court in an earlier decision:

13          In construing the scope of remedies provided in a statute, Nevada State courts, just as
            their federal counterparts, have long recognized and applied *"expressio unius est*
14          *exclusio alterius,"* a maxim of statutory construction meaning that "the expression of
            one thing is the exclusion of the other.
15

16      *Nunez v. Sahara Nevada Corp.*, 677 F. Supp. 1471, 1473 (D. Nev. 1988).[2]

17      For instance, the Nevada Supreme Court applied this maxim in *Hamm v. Carson City*

18  *Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969), to find "no implied right of action under a state

19  statute which provided for criminal penalties against the sale of liquor to anyone who is noticeably

20  intoxicated." *Nunez*, 677 F. Supp. at 1473 (discussing the *Hamm* decision).  As stated by the Nevada

21  Supreme Court in *Hamm*:

22          [Those opposed to inferring an implied private right of action from the statute] urge
            that if civil liability is to be imposed, it should be accomplished by legislative act
23          after appropriate surveys, hearings, and investigations to ascertain the need for it and
            the expected consequences to follow.  We prefer this point of view.  Judicial restraint
24          is a worthwhile practice when the proposed new doctrine may have implications far
25

26  ─────────────
    [2]  The Nevada Supreme Court has discussed and/or applied this maxim in numerous cases.  *See, e.g.,*
27  *Villanueva v. State*, 117 Nev. 664, 27 P.3d 443 (2001); *Desert Irr., Ltd. v. State*, 113 Nev. 1049, 944
    P.2d 835 (1997); *Bopp v. Lino*, 110 Nev. 1246, 885 P.2d 559 (1994); *O'Callaghan v. Eighth Judicial*
27  *Dist. Court*, 89 Nev. 33, 505 P.2d 1215 (1973); *State v. Wyatt*, 84 Nev. 731, 448 P.2d 827 (1968);
28  *State ex rel. State General Obligation Bond Commission v. Koontz*, 84 Nev. 130, 437 P.2d 72
    (1968); *Galloway v. Truesdell*, 83 Nev. 13, 422 P.2d 237 (1967).

LITTLER MENDELSON
90 West Liberty Street
Ste. 400
Reno, NV 89501
775.348.4888
Firmwide 65043409.1 021510 2007                                    15.

1    beyond the perception of the court asked to declare it.

2    *Hamm*, 85 Nev. at 101, 450 P.2d at 359 (quoted in *Nunez*, 677 F. Supp. at 1473).  Further, the *Hamm*

3    court declared the following:

4    > By providing for civil liability in one section and failing to do so in the section
> immediately following, the legislature has made its intention clear.  Accordingly, we
5    > must conclude that a violation of [the statute at issue] does not impose civil liability
> upon one in charge of a saloon or bar, . . . ."
6    > *Hamm*, 85 Nev. at 102, 450 P.2d at 360 (quoted in *Nunez*, 677 F. Supp. at 1473).

7

8    In NRS Chapter 613, numerous remedies are expressly set forth, but not in the case of

9    §613.075.  Had the legislature intended that a private cause of action be available under §613.075, it

10   would have been included.

11              **2.       Based upon Nevada case law, this Court should not imply a private cause**
                          **of action for violation of NRS § 613.075.**
12

13   Nevada courts have long recognized and applied the maxim *"expressio unius est exclusio*

14   *alterius"* to avoid implying a private cause of action where the statute has not created one.  For

15   instance, the court in *Nunez* found that no private cause of action exists under another statute

16   designed to protect workers, NRS § 613.160 (prohibiting employers from using "spotters" to

17   investigate employees and then firing employee without allowing employee to confront spotter).

18   Because NRS § 613.160 expressly created a *public* action against the employer, and because

19   violation of any other provision of the subchapter constituted a misdemeanor, the court held that no

20   private cause of action could obtain for violation of NRS § 613.160.  In so holding, the court also

21   relied on the *"expressio unius* principle" based on a presumption that "by providing a specific

22   remedy, the legislature intended to exclude others."  *Nunez*, 677 F. Supp. at 1477.

23   In reaching its conclusion that there is no implied private cause of action in NRS § 613.160,

24   the *Nunez* court discussed state and federal cases such as the *Hamm* and *National Railroad* cases

25   previously discussed.  In addition, the *Nunez* court cited this Court's decision in *Texas Intern.*

26   *Airlines, Inc., v. Bryan*, 522 F. Supp. 1182 (Nev. 1981), as support.  In its discussion of the *Texas*

27   *Airlines* holding that there was no implied private cause of action in favor of a target corporation for

28   violation of the Nevada Takeover Bid Disclosure Act, the *Nunez* Court quoted the following

16.

language:

> The [statute at issue] provides *specific civil* remedies in favor of an offeree . . . and *specific criminal* penalties for violations by an offeror . . . . No remedy in favor of the target corporation is *mentioned*. In these circumstances, the maxim of statutory construction *expressio unius est exclusio alterius* is applicable. Nevada has long recognized and applied this maxim to the interpretation of legislation.

> *Nunez*, 677 F. Supp. at 1476 (emphasis added) (quoting *Texas Airlines*, 522 F. Supp. at 1184).

Accordingly, when these facts are examined in conjunction with the maxim *"expressio unius est exclusio alterius,"* it becomes clear that the legislature plainly intended only *public* enforcement of this statute. Clearly, there is no indication that the legislature intended to create a private cause of action under §613.075, nor would it be consistent with the legislative scheme surrounding employment related statutes to imply one. See *Moen v. Las Vegas International Hotel*, 402 F.Supp. 157 (D.Nev.1975) (holding that a private cause of action was not available under NRS 608.160); See also *Cotter v. Desert Palace, Inc.*, 880 R.2d 1142 (9th Cir. 1989). Accordingly, Plaintiff's twelfth cause of action must be dismissed.

**H.    Plaintiff's Fourteenth Cause of Action should be dismissed with leave to amend or must be stated more definitely, as it does not indicate under which statutory authority a claim of retaliation is brought.**

In her Fourteen Cause of Action, Plaintiff alleges that Defendant RTC "thereby retaliated unlawfully against [Plaintiff]." However, Plaintiff fails to establish the statutory basis on which this claim is made. Federal claims of retaliation may be brought pursuant to Title VII, the Americans With Disabilities Act, the Age Discrimination in Employment Act and the Equal Pay Act. Plaintiff's Complaint makes no attempt to delineate under which federal statute her claim is based, and simply lists the claim under the heading "Federal Law Claim: Retaliation." The claim for relief therefore fails to state a claim for relief and is so ambiguous, that it does not allow Defendants to properly answer. Therefore, pursuant to Fed. Rules of Civ. Pro. 12(b) and 12(e), Defendants request dismissal or a more definite statement from Plaintiff with regard to this claim, which outlines the specific statutory basis on which Plaintiff's allegation is based.

...

LITTLER MENDELSON
50 West Liberty Street
Site 400
Reno, NV 89501
775 348 4888

Firmwide:65043409.1 021510.2007                                    17.

**I.      Plaintiff's Fifteenth Cause of Action should be dismissed with leave to amend or should be stated more definitely as it fails to identify a tort recognized by Nevada courts.**

In her Fifteenth Cause of Action, Plaintiff alleges that Defendants RTC and Robinson "interfered intentionally with the advantageous economic relations of [Plaintiff]." Complaint at ¶ 95. However, no such tort is recognized by Nevada courts. It appears that Plaintiff's claim may be correctly based on two causes of action which *are* recognized by Nevada courts: interference with contractual relations, or interference with prospective economic advantage. However, as Plaintiff has brought her claim under a tort that is not recognized by Nevada courts, her Fifteen Cause of Action fails to state a claim for relief and is ambiguous, and does not allow Defendants to properly answer. Therefore, pursuant to Fed. Rules of Civ. Pro. 12(b) and 12(e), Defendants request dismissal or a more definite statement from Plaintiff with regard to this claim, which outlines the specific statutory basis on which Plaintiff's allegation is based.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First, Ninth, Tenth Eleventh and Twelfth Causes of Action as a matter of law. With regard to each of these claims, Plaintiff has failed to allege sufficient facts to state each respective claim. Furthermore, Defendants respectfully request that this Court dismiss Plaintiff's Sixth, Seventh and Eighth Causes of Action, as they are duplicative of Plaintiff's Third, Fourth and Fifth Causes of Action. Finally, Defendants respectfully request that this Court dismiss them or order Plaintiff to provide a more definite statement of her Second, Fourteenth and Fifteenth Causes of Action, as they fail to state a claim and are ambiguous and insufficient to allow Defendants to file a proper answer.

Dated: May 26ᵗʰ, 2005                                    LITTLER MENDELSON

By: _____
ANTHONY L. HALL, ESQ., NV Bar #005977

Attorneys for Defendants
GREGORY KRAUSE, CAROLYN ROBINSON,
and REGIONAL TRANSPORTATION
COMMISSION

LITTLER MENDELSON
50 West Liberty Street
Ste. 400
Reno, NV 89501
775 348 4888

Firmwide:65043409.1 021510.2007                          18.

1

## PROOF OF SERVICE BY HAND DELIVERY

2       I, MARCIA FILIPAS, am a resident of the State of Nevada, over the age of eighteen years,

3   and not a party to the within action.  My business address 50 West Liberty Street, Ste. 400, Reno,

4   Nevada 89501.

5       On May 26th, 2005, I served a true copy of the **DEFENDANTS GREGORY KRAUSE,**

6   **CAROLYN   ROBINSON   AND   REGIONAL   TRANSPORTATION   COMMISSIONS'**

7   **PARTIAL MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT**

8   by HAND DELIVERY to the addressed as set forth below.

9

| Anne Vohl, Esq.<br>**One East Liberty Street, 6th Floor**<br>**Reno, Nevada 89501** | Rebecca Bruch, Esq.<br>**Erickson, Thorpe & Swainston**<br>**99 W. Arroyo Street**<br>**Reno, NV 89509** |
|---|---|

13       I declare under penalty of perjury that the foregoing is true and correct.

14   Dated: May 26th, 2005, at Reno, Nevada.

*Marcia Filipas*

MARCIA FILIPAS

## ADMINISTRATION AND PERSONNEL

### Merit Personnel System for

### Regional Transportation Commission Employees

I. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
    1.1    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
             Anniversary Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
             Appointing Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
             Break in Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
             Call-Back . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1
             Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Class Specification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Classification Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Classification Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Date of Hire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Demotion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Eligibles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2
             Employee, Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Full-Time Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Journey Level . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Merit Increase Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Merit Personnel Resolution . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Part-Time Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Pay Band . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3
             Personnel Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Probationary Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Promotion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Rebanding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Reclassification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             Regional Transportation Commission . . . . . . . . . . . . . . . . . . Page 4
             Regular Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
             RTC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
             RTC Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
             TMW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
             Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
             Underfilling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
             Work Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
    1.2    Establishment of Merit Personnel System . . . . . . . . . . . . . . . . . . . . Page 5
    1.3    Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
    1.4    Nepotism Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6
    1.5    Classified Service:  Composition, Appointments and Discharge . . . . . Page 6
    1.6    Unclassified Service:  Composition, Salaries Set
             By The Regional Transportation Commission . . . . . . . . . . . . . . . Page 6

II. CLASSIFICATION PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9
    2.1    Establishment of Classification Plan . . . . . . . . . . . . . . . . . . . . . . . . . Page 9

| | | |
|---|---|---|
| 2.2 | Revision of Classification Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 9 |
| 2.3 | Classification of Positions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 9 |
| 2.4 | Reporting Changes in Positions; Reclassification of Positions  . . . . . . | Page 9 |
| 2.5 | Investigations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 9 |
| 2.6 | Reclassification of Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 10 |
| 2.7 | Status and Pay Band Upon Reclassification  . . . . . . . . . . . . . . . . . . . . | Page 10 |
| 2.8 | Interpretation of Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 13 |
| 2.9 | Status and Salary Rate Upon Rebanding  . . . . . . . . . . . . . . . . . . . . . . . | Page 13 |
| | | |
| III. COMPENSATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | Page 15 |
| 3.1 | Compensation Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 15 |
| 3.2 | Establishing Pay Bands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 15 |
| 3.3 | Compensation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 15 |
| 3.4 | Application of Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 15 |
| 3.5 | Part-Time Employment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 15 |
| 3.6 | Rate on Initial Hire, Rehire, Promotion, | |
| | Advancement, Demotion, or Transfer . . . . . . . . . . . . . . . . . . . . . . . | Page 16 |
| 3.7 | Merit Salary Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 17 |
| 3.8 | Special Salary Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 18 |
| 3.9 | Statement of Overtime Policy; | |
| | Authority to Prescribe Policy and Procedures  . . . . . . . . . . . . . . . | Page 19 |
| 3.10 | Rate of Earning Accrued Overtime  . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 19 |
| 3.11 | Overtime to be Authorized in Advance . . . . . . . . . . . . . . . . . . . . . . . . . | Page 19 |
| 3.12 | Call-Back Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 19 |
| 3.13 | Reports of Overtime Work Required  . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 20 |
| 3.14 | Compensation for Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 20 |
| 3.15 | Payment of Accrued Compensatory Time upon Termination  . . . . . . . | Page 20 |
| 3.16 | Appeals from Salary Decisions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 20 |
| 3.17 | Career Incentive Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 21 |
| | | |
| IV. EXAMINATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | Page 23 |
| 4.1 | Types of Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 23 |
| 4.2 | Investigation of Applicants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 23 |
| 4.3 | Applications  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 23 |
| 4.4 | Eligibility to Compete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 23 |
| 4.5 | Promotional Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 24 |
| 4.6 | Time for Examinations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 24 |
| 4.7 | Postponement of Tests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 24 |
| 4.8 | Continuous Examinations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 24 |
| 4.9 | Announcement of Examinations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 25 |
| 4.10 | Minimum Passing Scores . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 25 |
| 4.11 | Key Copy Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 25 |
| 4.12 | Corrections of Examination Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 25 |
| 4.13 | Employment of Persons with Disabilities . . . . . . . . . . . . . . . . . . . . . . . | Page 25 |
| | | |
| V. CERTIFIED LISTS OF ELIGIBLE CANDIDATES AND SELECTION . . . . . . . . . | | Page 27 |
| 5.1 | Types of Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 27 |
| 5.2 | Order of Names . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 27 |
| 5.3 | Duration of Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 27 |
| 5.4 | Merger of Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Page 27 |
| 5.5 | Removal of Names from Eligible Lists . . . . . . . . . . . . . . . . . . . . . . . . . | Page 27 |

5.6     Human Resources Administrator May
        Refuse to Examine or Refuse to Certify ..................... Page 28
5.7     Statement of Human Resources Administrator Upon Refusal
        to Examine or Certify; Appeal to Executive Director ........... Page 29
5.8     Certification of Names ................................. Page 29
5.9     Selection of Candidates ............................... Page 29
5.10    Duty of Eligibles to Respond to Request to Consider ........... Page 30

VI. APPOINTMENTS ........................................ Page 31
6.1     Types of Appointments ............................... Page 31
6.2     Rehire, Veterans' Rehire ............................. Page 31
6.3     Transfer: Kinds of Transfers; Conditions ................... Page 31
6.4     Transfer: Probationary Periods ......................... Page 31
6.5     Transfer: Protests .................................. Page 31
6.6     Promotion: Probationary Period ........................ Page 32
6.7     Probationary Appointments ............................ Page 32
6.8     Temporary Appointments .............................. Page 32
6.9     Temporary Appointments for the Disabled .................. Page 32
6.10    Underfilling of Positions .............................. Page 33
6.11    Voluntary Demotion ................................. Page 34
6.12    Reports of Personnel Actions .......................... Page 34
6.13    Roster ........................................... Page 34
6.14    Confidential Records ................................. Page 35

VII. PROBATIONARY PERIOD ................................. Page 37
7.1     Length of Probationary Period .......................... Page 37
7.2     Interrupted Probationary Period ........................ Page 37
7.3     Reports of Performance ............................... Page 37
7.4     Rejection of Probationary Employees ..................... Page 37

VIII. ATTENDANCE AND LEAVES ............................... Page 39
8.1     Normal Work Week .................................. Page 39
8.2     Holidays - Fixed and Floating .......................... Page 39
8.3     Compensation for Holidays Worked; Limit on Accrual ........... Page 40
8.4     Temporary Employees Not Compensated for Vacation or
        Holidays On Which They Do Not Work .................... Page 40
8.5     Vacation Accrual Rate - Full-Time Employees ................ Page 41
8.6     Vacation Accrual Rate - Part-Time Employees ............... Page 42
8.7     Vacation Accrual for Employees Holding More
        Than One Position; Hourly Paid Employees ................ Page 42
8.8     Time When Vacation Shall Be Taken ...................... Page 42
8.9     Maximum Vacation Accumulation ........................ Page 42
8.10    Cash Payment for Accrued Vacation: Death of Employee
        Entitled to Unused, Accumulated Vacation ................. Page 43
8.11    Records and Reports ................................. Page 43
8.12    Accrual of Vacation Credit on Separation and Rehire ........... Page 43
8.13    Sick Leave Accrual Rate .............................. Page 43
8.14    Sick Leave Accrual for Employees Holding More
        Than One Position; Hourly Paid Employees ................ Page 44
8.15    Sick Leave Payment on Separation ....................... Page 44
8.16    Use of Sick Leave .................................. Page 45

8.17    Sick Leave When Receiving Industrial Insurance or
        Occupational Diseases Act Benefits . . . . . . . . . . . . . . . . . . . . . . . . .  Page 46
8.18    Approval and Substantiating Evidence for Sick Leave . . . . . . . . . . .  Page 46
8.19    Earning of Sick Leave While On Leave  . . . . . . . . . . . . . . . . . . . . . .  Page 46
8.20    Advanced Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 46
8.21    Catastrophic Sick Leave Bank . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 47
8.22    Records and Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 47
8.23    Personal Leave  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 47
8.24    Leaves of Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 48
8.25    Reporting of Absences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 51
8.26    Absence Without Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 51
8.27    Adjustments in Anniversary Dates:  Continuous Service . . . . . . . . . .  Page 51

IX.  EVALUATION OF PERFORMANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 53
9.1     Performance Evaluation:  Timing and Method . . . . . . . . . . . . . . . . . .  Page 53
9.2     Standard Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 53
9.3     Copies of Performance Evaluation Reports . . . . . . . . . . . . . . . . . . . .  Page 54

X.  TRAINING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 55
10.1    Training:  Responsibility of Appointing Authority  . . . . . . . . . . . . . . .  Page 55
10.2    Training in New Processes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 55
10.3    Specialized Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 55

XI.  SEPARATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 57
11.1    Resignation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 57
11.2    Payment of Benefits Upon Separation . . . . . . . . . . . . . . . . . . . . . . .  Page 57
11.3    Contents of Action Form:  Review,
        Recommendation and Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 57
11.4    Layoff:  Formula  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 58
11.5    Layoff:  Returnees from Military Service  . . . . . . . . . . . . . . . . . . . . .  Page 59
11.6    Layoff:  Demotions; Displacements; Transfers  . . . . . . . . . . . . . . . . .  Page 59
11.7    Layoff:  Written Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 61
11.8    Layoff:  Rehire; Preference For Employees Electing Temporary
        Demotion; Status, Dispositions of Accrued Sick Leave  . . . . . . . . .  Page 61

XII.  DISCIPLINARY AND CORRECTIVE ACTIONS . . . . . . . . . . . . . . . . . . . . . .  Page 63
12.1    Disciplinary Warning and Reprimand . . . . . . . . . . . . . . . . . . . . . . . .  Page 63
12.2    Suspension  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 63
12.3    Involuntary Demotion and Dismissal . . . . . . . . . . . . . . . . . . . . . . . .  Page 63
12.4    Notice of Unsatisfactory Performance  . . . . . . . . . . . . . . . . . . . . . . .  Page 64
12.5    Procedure for Suspension Without Pay and Demotion  . . . . . . . . . .  Page 64
12.6    Procedure for Notice and Discharge  . . . . . . . . . . . . . . . . . . . . . . . .  Page 64
12.7    Suspensions Due to Pending Criminal Charges  . . . . . . . . . . . . . . .  Page 65

XIII.  APPEALS AND HEARINGS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 67
13.1    Response to Notice of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 67
13.2    Appeal from Discipline or Actions Taken
        for Unsatisfactory Performance  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 67

XIV.  PROHIBITIONS AND PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Page 69
14.1    Incompatible Activities:  Prohibitions . . . . . . . . . . . . . . . . . . . . . . . .  Page 69

14.2    Incompatible Activities: Designation .......................... Page 69
14.3    Political Activity ............................................ Page 69
14.4    Prohibition Against Discrimination ........................... Page 70

XV.  BENEFITS   ...................................................... Page 71
15.1    Public Employees' Retirement System of Nevada (PERS) ........ Page 71
15.2    Group Insurance Plans ....................................... Page 71
15.3    Washoe Credit Union ......................................... Page 73
15.4    Deferred Compensation ....................................... Page 73
15.5    Tuition Reimbursement ....................................... Page 73
15.6    Employee Assistance Program (EAP) ........................... Page 73
15.7    IRS 125 Flexible Benefits Plan .............................. Page 73
15.8    Long Term Disability Insurance .............................. Page 74
15.9    Severance Pay ............................................... Page 74
15.10   Direct Deposit of Payroll Checks ............................ Page 74
15.11   Computer Purchase Program ................................... Page 74
15.12   Health Fair ................................................. Page 74
15.13   Employee Wellness Program ................................... Page 74
15.14   Citifare Bus Pass ........................................... Page 74

XVI. MANAGEMENT RIGHTS ............................................... Page 75
16.1    Management Rights ........................................... Page 75
16.2    Savings Clause .............................................. Page 75

**MERIT PERSONNEL SYSTEM FOR**
**REGIONAL TRANSPORTATION COMMISSION EMPLOYEES**

### I. GENERAL PROVISIONS

Each individual employed by the Regional Transportation Commission shall have access to a copy of the Regional Transportation Commission Personnel Rules and all pertinent regulations promulgated thereunder through the Human Resources office.

1.1     Definitions

Unless the context requires otherwise, the terms used in the Regional Transportation Commission Personnel Rules have the following definitions:

"Anniversary Date"

1.     One year from the date of hire, rehire, most recent promotion or demotion, last change in status within a class, pay band, or as adjusted under Section 8.27.

2.     A cost-of-living increase affecting all Regional Transportation Commission employees authorized at any time by the Regional Transportation Commission Board shall not affect the anniversary date of any employee.

3.     A change from full-time to part-time or part-time to full-time within the same class does not affect the anniversary date of any employee.

"Appointing Authority"

The Executive Director and each appointed head of a department having the authority to make appointments to positions in the Regional Transportation Commission service.

"Break in Service"

An interruption of an employee's continuous Regional Transportation Commission service requiring the removal of the employee's name from payroll records, except as exempted by Section 8.27.

"Call-Back"

When an employee returns to the work site because of an unexpected job necessity, such as an emergency response situation, or an employer request, after the employee has completed his or her normal work shift and left the work station.

"Class"

A group of positions sufficiently similar with respect to duties and responsibilities that the same title may reasonably and fairly be used to designate each position allocated to the class, substantially the same criteria of fitness may be used, substantially the same minimum qualifications may be required, and the same schedule of compensation may be made to apply with equity. (Examples:   Accounting Technician, Associate Planner, etc.)

"Class Specification"

A written description of a class (see definition for class) consisting of a title, a definition, examples of duties, and minimum qualifications required. (Also referred to as job specification.)

"Classification Plan"

All the classes which have been established, along with the rules for maintaining the plan and the class specifications.

"Classification Process"

The systematic process of analytically grouping and allocating positions to classes based on the similarity of actual duties and responsibilities.

"Date of Hire"

The date of original employment in regular status by the Regional Transportation Commission or by Washoe County or Transit Management of Washoe if hired prior to July 1, 1985, for all employees who became Regional Transportation Commission employees as of July 1, 1985. Date of original employment for temporary employees subsequently hired in regular status without a break in service prior to October 1994.

"Demotion"

Any movement, voluntary or involuntary, of an employee to a position in a class having a lower maximum salary than the position previously occupied, excluding general salary adjustment or reclassifications to a lower pay band.

"Eligibles"

Those persons who have successfully participated in a selection process for a particular position and whose names have been placed on an "eligible list" for consideration for hire by the Regional Transportation Commission.

"Employee, Employer"

1.    An employee is any person employed by the Regional Transportation Commission after July 1, 1985, whose compensation is provided by the Regional Transportation Commission and who is under the direction or control of officers of the Regional Transportation Commission.

2.    "Employee" does not include independent contractors or persons rendering professional services to an employer on a fee, retainer or contract basis.

3.    "Employer" means the Regional Transportation Commission and shall not be construed to mean "Appointing Authority."

"Full-Time Employee"

A Regional Transportation Commission employee working or in a paid leave status forty (40) hours each week on a regularly scheduled basis.

"Journey Level"

The level at which an employee is expected to perform all aspects of the position competently.  A journey-level worker has learned a trade, profession, or a particular job.

"Merit Increase Date"

One year from the date of employment, rehire, most recent promotion or demotion, last full annual merit salary increase, or as extended by a leave of absence under Section 8.27.

"Merit Personnel Resolution"

Refers to Chapters I. to XVI., inclusive, of this Document.

"Overtime"

Any time worked including paid-leave hours in excess of forty (40) hours in a week.

"Part-Time Employee"

A Regional Transportation Commission employee working less than forty (40) hours per week on a regularly scheduled basis.

"Pay Band"

A term used to designate a salary level.  All classes placed in the same pay band have the same salary range.

"Personnel Officer"

The person assigned that responsibility by the Executive Director.

"Position"

A group of duties and responsibilities which have been assigned to a single employee on a full-time or part-time basis.

"Probationary Period"

An evaluation period served by classified Regional Transportation Commission employees, upon initial hire or upon a change in status (i.e., promotion, etc.), normally twelve months in length, but may be extended for performance reasons based upon the Appointing Authority's and Personnel Officer's discretion.

"Promotion"

The movement of an employee to a position having a higher maximum salary than the position previously occupied on the basis of significant differences in the duties or responsibilities of the work performed.

"Rebanding"

The process of allocating a position to a different pay band than the one to which it is currently assigned. This differs from reclassification or promotion in that there are no significant changes to the job duties or tasks; the position is simply assigned to a different pay band based on relevant market data and internal factors.

"Reclassification"

A change in a position, on the basis of significant changes in kind, difficulty, or responsibility of the work performed, by raising it to a higher class at a higher pay band, reducing it to a lower class at a lower pay band, or moving it to another class at the same pay band. (Refer to definition of Classification Process.)

"Regional Transportation Commission"

As used in this document and based upon the context, Regional Transportation Commission may refer to the governmental organization or to the body of appointed officials (commissioners) appointed by the political subdivisions of Washoe County pursuant to Nevada Revised Statutes.

"Regular Employee"

An employee who has been retained in his or her position after completion of the probationary period.

"RTC"

Regional Transportation Commission.

"RTC Employee"

Employees hired by the Regional Transportation Commission after July 1, 1985, or Washoe County employees working for the Regional Transportation Commission and hired prior to July 1, 1985, or Transit Management of Washoe employees hired by the Regional Transportation Commission on July 1, 1985.

"TMW"

Transit Management of Washoe.

"Transfer"

Any movement of an employee from one position to another position in the same class or related class with the same pay band.

"Underfilling"

The filling of a position with a person in a title/classification and pay band lower than that approved for the position being filled.

"Work Week"

The period commencing 12:01 a.m. Sunday and ending 12:00 midnight the following Saturday.

1.2    Establishment of Merit Personnel System

A merit personnel system for all employees of the Regional Transportation Commission is hereby established.

1.3    Rules and Regulations

    1.    The Executive Director, with the approval of the Regional Transportation Commission, shall from time to time promulgate appropriate rules and regulations for the administration of the Merit Personnel System.

    2.    Nothing in this Section shall be construed to prohibit Appointing Authorities from promulgating office or department rules and regulations not in conflict with any provision of law, the Merit Personnel System, or the rules and regulations promulgated pursuant to the above provisions.  A copy of any such rule and regulation or amendment thereto shall be filed with the Personnel Officer.

1.4    Nepotism Prohibited

It is unlawful as regulated by Nevada Revised Statute 281.210 for an Appointing Authority to employ in any capacity on behalf of the Regional Transportation Commission any relative of their own or any board member of the Regional Transportation Commission or any relative of any board member within the third degree of consanguinity or affinity.

1.5    Classified Service:  Composition, Appointments and Discharge

    1.    The classified service of the Regional Transportation Commission is comprised of all positions in the service of the Regional Transportation Commission now existing or hereafter created which are not included in the unclassified service.

    2.    Appointments in the classified service must be made according to merit and fitness from eligible lists prepared upon the basis of examination, which must be open and competitive, except as otherwise provided in this Merit Personnel System.

3. A person shall not be appointed, transferred, promoted, demoted or discharged as an employee in the classified service in any manner or by any means other than those prescribed in this Merit Personnel System.

4. A person shall not be discriminated against on the basis of religious opinions or affiliations, age, color, sex, sexual orientation, disability, or national origin.

1.6   Unclassified Service:  Composition, Salaries Set By The Regional Transportation Commission

1. The unclassified service of the Regional Transportation Commission shall be comprised of positions held by Regional Transportation Commission employees, as follows:

   (a) Appointed heads of departments, the Executive Office Administrator, the Human Resources Administrator, and the Executive Director.

   (b) All persons holding temporary appointments.

   (c) Such other officers and employees as are authorized by law to be employed in the unclassified service.

2. Salary ranges of all persons in the unclassified service shall be fixed by the Regional Transportation Commission upon recommendation of the Executive Director.

3. No person appointed to the unclassified service shall be entitled to the rights, privileges or provisions of the classified service relative to appointment, promotion, demotion, transfer, or rehire. An unclassified employee shall serve at the pleasure of the Executive Director.

## II. CLASSIFICATION PLAN

2.1   Establishment of Classification Plan

1.   The classification plan shall be approved by the Regional Transportation Commission upon the recommendation of the Personnel Officer.   (The Administrative Services Director is the designated Personnel Officer.)

2.   The Regional Transportation Commission declares that since uniform salary and wage rates and class specifications are necessary for an effective and efficient personnel system, the compensation plan shall set the official compensation rates applicable to all positions in the classified service, but the establishment of the compensation plan shall in no way limit the authority of the Regional Transportation Commission relative to budgeted appropriations for salary and wage expenditures.

2.2   Revision of Classification Plan

1.   Subject to the approval of the Regional Transportation Commission and after consultation with the Human Resources Administrator and Appointing Authorities, the Personnel Officer shall from time to time, as necessary, recommend additional classes or divide, combine, alter, or abolish classes to meet the needs of the service.

2.   The Personnel Officer shall from time to time, as necessary, after consultation with Appointing Authorities and the Human Resources Administrator, recommend changes in the Regional Transportation Commission Personnel Rules.

2.3   Classification of Positions

All positions in the classified service shall be allocated to an appropriate class in the classification plan.  The allocation of positions to classes shall be governed by the duties and responsibilities of the positions.

2.4   Reporting Changes in Positions; Reclassification of Positions

Whenever an Appointing Authority proposes the establishment of a new position or makes a significant change in the duties and responsibilities of an existing position, the facts shall be reported to the Personnel Officer.  The Personnel Officer shall then allocate the position to one of the existing classes or recommend the establishment of another class to which the position can be appropriately allocated.

2.5   Investigations

The Personnel Officer, upon the written request of an Appointing Authority or an employee, may investigate the classification status of any existing position.  The Personnel Officer may also direct periodic reviews of classifications.

2.6   Reclassification of Positions

There are different situations that may be the catalyst for the reclassification of a position. These are listed below.

1. An incumbent of a position, or the supervisor of a position, may request that the Human Resources Administrator conduct a classification study because the position has evolved and it is suspected that the classification (job description) no longer accurately describes the duties and responsibilities performed. The position may also have evolved so that the current minimum requirements are no longer sufficient to ensure adequate performance of the required duties and demands of the reclassified position.

2. The needs of the Organization may dictate making significant changes to a position by assigning additional or different duties and responsibilities, or by deleting certain duties and responsibilities which may make the present classification improper.

3. The Human Resources Administrator may conduct a periodic classification review of specific positions within the organization and discover changes in positions that warrant a change in classification and job description.

2.7     Status and Pay Band Upon Reclassification

When a position is reclassified, the following rules shall apply.

1. When a position is reclassified as a result of an evolutionary change in the position over a period of time, an incumbent of the reclassified position shall retain his or her appointment and shall automatically move to the level of the reclassified position. Incumbents of reclassified positions under this paragraph shall not be required to serve a new probationary period. In addition, one of the following will apply to the compensation level of the incumbent.

   (a) Incumbents of reclassified positions assigned to the same pay band shall retain their current salary and anniversary date.

   (b) Incumbents of positions reclassified to a lower pay band shall retain their current salary or be moved to the top of the new pay band, whichever is less, and shall retain their current anniversary date. Any exceptions shall be consistent with the provisions of Section 3.4, Application of Rates.

   (c) Incumbents of positions reclassified to a higher pay band shall be evaluated by their immediate supervisor to determine their salary rate upon advancement.

      (1) If the incumbent is rated standard satisfactory or better, the incumbent will receive a reclassification salary increase consistent with the rules for promotion under Section 3.6, Paragraph 3. The incumbent shall receive a new anniversary date and be eligible for a pro-rated merit increase and bonus for the portion of the year served in the position prior to the reclassification.

(2) Incumbents who are rated at a below satisfactory level shall not receive a reclassification salary increase unless their current salary is less than the bottom of the new pay band, in which case their salary would then be increased to the bottom of the new pay band. Such employees would receive a new anniversary date and be eligible for a delayed reclassification salary increase and a delayed merit increase after six months of satisfactory performance in which they are rated satisfactory or better for two consecutive evaluations completed at least three months apart. Employees receiving a delayed merit increase are not eligible for a bonus until their next annual review.

2. When a position is reclassified as a result of a decision to assign different or additional duties which significantly and substantially change the position and its major functions, and the incumbent is expected to assume the new duties immediately, the incumbent will be moved to the new position and one of the following situations will apply.

(a) If the position is reclassified at the same pay band, the incumbent will retain their current salary. Based on the new requirements of the position and the incumbent's proven ability to perform them, a new probationary period may be required at the discretion of the Department Director and the Personnel Officer. If a new probationary period is required, a new anniversary date will be assigned, and the incumbent will be eligible for a pro-rated merit increase and bonus for the portion of the year served in the former classification within the limits of the salary range.

(b) If the position is reclassified to a lower pay band, the incumbent will maintain the current salary or move to the top of the new range, whichever is less. Any exceptions shall be consistent with the provisions of Section 3.4, Application of Rates. Based on the new requirements of the position and the incumbent's proven ability to perform them, a new probationary period may be required at the discretion of the Department Director and the Personnel Officer. If a new probationary period is required, a new anniversary date will be assigned, and the incumbent will be eligible for a pro-rated merit increase and bonus for the portion of the year served in the former position within the limits of the new salary range.

(c) If the position is reclassified to a higher pay band, the incumbent will receive a reclassification salary increase within the limits of the new range, consistent with the rules for promotion under Section 3.6, Paragraph 3. The incumbent will be required to serve a new probationary period. Accordingly, he or she will receive a new anniversary date and be eligible for a pro-rated merit increase and bonus for the portion of the year served in the former classification.

3. When a position is reclassified as a result of a decision to assign different or additional duties which significantly and substantially change the position and its major functions, and the incumbent is <u>not</u> expected to assume the new responsibilities of the reclassified position immediately because a new skill(s) must be acquired, the following will occur:

The incumbent will not automatically be moved to the new classification. An appropriate period of time for learning the new skill(s) shall be set by the Personnel Officer and the Appointing Authority and shall serve as a probationary/training period. The length of the probationary period will be determined by the skills required and may be less than, more than, or equal to twelve months. A new anniversary date will be assigned and the employee will be eligible for a pro-rated merit increase and bonus for the period of time served prior to the reclassification, within the limits of the new salary range. The following provisions shall apply to incumbents of positions reclassified under this paragraph.

(a) If the position is reclassified at the same pay band, the incumbent will maintain the current salary. Upon successful completion of the probationary/training period, the employee shall be moved to the new classification. A new anniversary date will be assigned and the incumbent will be eligible for a pro-rated merit increase and bonus for the period of time served since the last merit-increase evaluation.

(b) If the position is reclassified to a lower pay band, the incumbent will maintain the current salary or move to the top of the new range, whichever is less, upon reclassification of the position. Any exceptions shall be consistent with the provisions of Section 3.4, Application of Rates. Upon successful completion of the probationary/training period, the employee shall be moved to the new classification. A new anniversary date will be assigned and the incumbent will be eligible for a pro-rated merit increase and bonus for the period of time served since the last merit-increase evaluation.

(c) If the position is reclassified to a higher pay band, the incumbent shall maintain the current salary. Upon successful completion of the probationary/training period, the employee shall be advanced to the higher classification and receive a reclassification salary increase consistent with Section 3.6, Paragraph 3. A new anniversary date will be assigned and the incumbent will be eligible for a pro-rated merit increase and bonus for the period of time served since the last merit-increase evaluation.

If an incumbent under (a), (b), or (c) above has not mastered the skills necessary and is not performing satisfactorily at the end of the training/probationary period, the period may be extended by the Personnel Officer at the request of the Appointing Authority. Any extension of the training/probationary period will be based on justifiable circumstances and evidence that an extension will result in successful completion of the training. If it is not evident that additional training time will result in satisfactory performance, the employee may be terminated for unsatisfactory completion of the training/probationary period; may be demoted to a position/classification at which he or she can perform satisfactorily, if such a vacancy exists; or the Appointing Authority may have the position reclassified to a lower level at which the employee can satisfactorily perform. Reclassification of the position to a lower level must be based on the needs of the organization, not the employee.

2.8    Interpretation of Specifications

1.  The class specifications are intended to be descriptive and explanatory rather than restrictive. The use of a particular expression or illustration as to duties shall not be interpreted to exclude others not mentioned which are of similar kind or quantity.

2.  In determining the class to which any position shall be allocated, the specification shall be considered as a whole and in relation to others in the classification plan. Consideration shall be given to the duties, responsibilities, qualifications, knowledge, skills, and abilities required in relation to those of other classes in determining the kinds of positions which a class is intended to include.

3.  The statement of qualifications required for a particular class is intended as a standard for the evaluation of applicants. The Personnel Officer shall interpret these qualifications so that equivalent qualifications to those stated in the specifications will be accepted.

2.9   Status and Salary Rate Upon Rebanding

When the duties of a position have not significantly changed, but based upon relevant market data and internal factors it is determined that the current pay band is not correct for the duties being performed, the position may be assigned to a new pay band. When a position is rebanded and the incumbent's current salary is within the new pay band, there will be no change to the incumbent's salary. If the rebanding results in a lower pay band for the position and the incumbent's current salary is higher than the maximum of the new pay band, the incumbent's salary will be reduced to the maximum of the new pay band. If the rebanding results in a higher pay band for the position and the incumbent's current salary is lower than the minimum of the new pay band, the incumbent's salary will be increased to the bottom of the new pay band. Any exceptions shall be consistent with the provisions of Section 3.4, Application of Rates.

## III. COMPENSATION

3.1    Compensation Plan

The compensation plan of the Regional Transportation Commission consists of the schedule of pay bands as prepared by the Executive Director after consultation with the Personnel Officer, Human Resources Administrator, Appointing Authorities, and approval by the Regional Transportation Commission. Each class in the classification plan shall be assigned to the appropriate pay band in the compensation plan.

3.2    Establishing Pay Bands

In recommending to which pay band classes shall be assigned, the Executive Director shall give appropriate consideration to the following factors:

1.    Maintenance of equitable relationships between classes based on their relative duties and responsibilities;

2.    The level of prevailing rates for comparable work in private and public employment; and

3.    Available cost-of-living information.

3.3    Compensation

The pay band for each class represents the range of annual pay for full-time employment unless the compensation plan specifically states otherwise. Unless otherwise indicated in the compensation plan, the rates of pay set forth represent the total salary or wages except for overtime compensation.

3.4    Application of Rates

Each full-time employee in the classified service shall be paid at a rate within the salary range/pay band identified for the appropriate class. When a position has been reclassified or rebanded to a class with a lower pay band, the Personnel Officer may authorize the retention by the affected employee of the salary rate held before the reclassification or rebanding, upon a documented and justifiable request by the Appointing Authority. When this occurs, the affected employee retains that same rate until such time as the rate in the new pay band exceeds that retained rate or until that employee has another change in status.

3.5    Part-Time Employment

1.    An employee is considered a part-time employee if, on a regular basis, total weekly work or paid-leave time is less than forty (40) hours.

2.    An employee who works a fixed or variable proportion of the established work week, such as one-half (½) time, one-quarter (¼) time or hours as needed, shall be paid for the actual hours worked.

3.  No full-time Regional Transportation Commission employee shall be engaged in additional part-time work for the Regional Transportation Commission or Transit Management of Washoe.

3.6   Rate on Initial Hire, Rehire, Promotion, Advancement, Demotion, or Transfer

1.  Initial hire for a position shall be made at the entry rate of the range for the class, except as provided in Section 3.8.

2.  When a former regular employee is rehired, after a break in service, to a position in the same or related class, the employee may be paid at or below the salary the employee received when he or she left Agency service, except as provided in Section 3.8.

3.  When an employee, without a break in service, is promoted, the employee shall be entitled to a salary increase equal to the percentage difference between the maximum salary of the two pay bands, not to exceed ten percent (10%), or to the entry level of the new pay band, whichever salary is greater. Any exception may be approved by the Executive Director upon written justification from the Appointing Authority.

4.  When a regular employee is demoted, either voluntarily or involuntarily, to a position in a pay band which is less than the pay band for the position the employee currently holds, the employee's salary shall reflect a decrease equal to the percentage difference between the maximum salary of the two pay bands, up to five percent (5%), or the maximum of the new band, whichever salary is less. Any exception may be approved by the Executive Director upon written justification from the Appointing Authority.

5.  When an employee transfers to a position in another class with the same pay band, the employee shall be entitled to the corresponding salary in the same range. Any exception may be approved by the Executive Director upon written justification of the Appointing Authority.

6.  When a current employee is selected to underfill a position, (as provided in Section 6.10), and the position is at a higher pay band than the previous position, he or she shall receive a promotional increase in accordance with Paragraph 3 of this Section.

7.  When an employee who is underfilling a position successfully completes the probationary/training period and is advanced to the journey-level position, one of the following outcomes relative to compensation will apply:

    (a)  If the employee received a promotional increase under the provisions of Paragraph 6 of this Section which was equal to what would have been received upon promotion to the journey-level position without underfilling at an interim level, he or she shall not be eligible for an additional promotional increase. If the increase was less than what would have been received, the employee shall receive the remaining amount. In addition, the employee will be eligible for a merit increase consistent with the provisions of Section 3.7, Paragraph 7.

(b) If the position had been underfilled by a candidate from an open-competitive eligible list, the employee will receive a merit increase, consistent with the provisions of Section 3.7, Paragraph 7, or the minimum of the journey-level range of the position, whichever is higher.

3.7    Merit Salary Adjustments and Pay-for-Performance

1.    Regional Transportation Commission employees, full-time and part-time, whose salaries are not at the top of their pay band are eligible for an annual merit increase. Employees shall be granted a four percent (4%) salary increase or an increase to the top of their pay band, whichever is less, if rated as satisfactory or better on their annual performance evaluation by the Appointing Authority. Employees rated 'very good' or 'excellent' also receive a bonus of 4.5% for very good performance or 5.5% for excellent performance. The bonus amount will be based on the employee's base salary amount for the review period. Earned merit salary adjustments and performance bonuses shall be effective on the employee's anniversary date. Bonuses shall be paid as a lump sum amount.

2.    Management employees, specifically the Executive Director, Deputy Executive Director, and Department Directors, whose salaries are not at the top of their pay band, are eligible for an annual merit increase of between zero percent and ten percent (0% - 10%), or an increase to the top of their pay band, whichever is less, based upon performance and accomplishment of established objectives. Upon reaching the top of their pay band, these employees shall be eligible for a bonus as described in Section 3.7., Paragraph 1.

3.    An employee who is not given a merit salary increase on the annual merit review date because of performance that is rated below satisfactory is eligible to receive the merit increase after being re-evaluated during the annual review year and rated satisfactory or better over a six (6) month period on two (2) consecutive evaluations completed at least three (3) months apart. Granting a delayed merit salary increase at any time in the succeeding year does not affect the employee's anniversary date and the increase in pay will not be retroactive to the anniversary date. An employee who has had a merit salary increase delayed is not eligible for a bonus until the next anniversary date.

4.    An employee who has had a merit salary increase withheld is entitled to receive this increase only within the immediately succeeding merit review period (i.e., one (1) year).

5.    Periods of qualifying service which immediately precede a layoff or authorized leave of absence shall be qualifying service in determining an employee's eligibility for merit salary adjustment.

6.    When the merit salary adjustment is delayed solely through administrative or clerical error, the adjustment shall be made effective as of the date it was properly due.

7.    When an employee is selected for promotion, prior to implementing the promotional increase, he or she shall be eligible for a pro-rated merit increase and

bonus for the portion of the year completed in the current position based on a performance evaluation completed by the pre-promotion supervisor.

3.8     Special Salary Adjustments

1.   Special salary adjustments may be approved in order to:

(a)  Meet difficult recruiting problems or to obtain a person with markedly superior qualifications.

(b)  Give an employee a five percent (5%) pay increment in recognition for carrying responsibilities beyond those required for the class as a whole, such as supervising persons in the same class on a continuing basis for a portion of their time, or working under considerably less supervision than is typical in the class.

(c)  Give an employee a temporary increase in pay for assuming a substantial portion of the major duties of another who is in a higher pay band for a temporary period of time, i.e., "acting pay" while a supervisor is on leave, etc. The employee must be performing the duties for a minimum of five (5) consecutive days to be eligible for the temporary increase. The amount will generally be equal to the percentage difference between the maximum salary of the two pay bands, not to exceed ten percent (10%), or to the entry level of the new pay band, whichever salary is greater. Whether the employee is performing a substantive portion of the major duties will be determined by the supervisor with the approval of the Executive Director. The amount to be received shall also be recommended by the supervisor and approved by the Executive Director.

(d)  Correct salary inequities.

2.   Appointing Authorities may appoint individuals up to twenty-five percent (25%) into the salary range for those classifications found only in their departments. For classifications found in more than one (1) department and for appointments above the twenty-five percent (25%) point in classifications unique to one (1) department, the Executive Director may approve requests from Appointing Authorities for appointments above the entry level. Whenever a position is filled in this manner, incumbents of positions in the same class earning less than the salary at which the new employee is appointed may be raised to that salary by the Appointing Authority if the classification is found only in the Appointing Authority's department or by the Executive Director for classifications found in more than one (1) department.

3.9     Statement of Overtime Policy; Authority to Prescribe Policy and Procedures

1.   It is the policy of the Regional Transportation Commission that overtime should be kept to an absolute minimum consistent with the basic functions and purposes of the operating department and shall remain within the spending authority as provided in each department's budget.

2.   Decisions concerning the need for overtime are fiscal and management functions.

3.10 Rate of Earning Accrued Overtime

1. Overtime pay for employees of the Regional Transportation Commission shall be earned at the rate of time and one-half except for executive and management positions on the classification schedule.

2. Management employees, specifically the Executive Director, Deputy Executive Director, Department Directors, and employees officially assigned as 'acting' in one of those capacities, shall not be eligible for overtime. In addition, no absences of less than one (1) full day will be deducted from their accrued leave or salary.

3.11 Overtime to be Authorized in Advance

In cases where overtime is necessary, it shall be authorized in advance by the responsible supervisor before being worked by the subordinate employee, unless emergency prevents prior approval.

3.12 Call-Back Pay

1. When an employee returns to work because of an unexpected job necessity, such as an emergency response situation or an employer request, after the employee has completed his or her normal work shift and left the work station, the employee shall be credited with two (2) hours work plus any hours of work in excess of two (2) hours in which the employee is continuously engaged in work for which he or she was called back.

2. Call-back pay is subject to the review and approval of the Appointing Authority. Call-back pay shall apply only when an employee is required to physically return to work in order to perform required duties.

3. An employee shall be credited with an additional two (2) hours work plus any hours of work in excess of two (2) hours for any subsequent call-back beyond the two (2) hour minimum previously credited. An employee shall not be paid more than once for any block of time.

4. An employee credited with two (2) hours pursuant to this Section may be assigned other work until the guaranteed time has elapsed.

5. Call-back pay shall be paid at the appropriate rate of pay as established in the Fair Labor Standards Act (FLSA), (i.e., straight time pay if hours worked in the week are less than forty (40), or one and one-half (1½) times the regular rate of pay if hours worked in the week are in excess of forty (40).)

3.13 Reports of Overtime Work Required

All overtime work shall be reported on a biweekly basis to the Finance Department.

3.14 Compensation for Overtime

1. At the employee's option, he or she shall be compensated for overtime work in the following manner:

      (a)  Cash payment computed at the rate established in Section 3.10, to be paid with the next regular payroll; or

      (b)  In lieu of cash payment, compensatory time off computed at the rate specified in Section 3.10.

2.  Compensatory time accrued in excess of one hundred twenty (120) hours shall be paid to the employee in a cash payment computed at the employee's regular hourly rate.

## 3.15   Payment of Accrued Compensatory Time upon Termination

If an employee who has accumulated compensatory time terminates Regional Transportation Commission employment before the accumulated time has been taken, all accumulated compensatory time shall be compensated at the time of termination.

## 3.16   Appeals from Salary Decisions

Reasonable opportunity to be heard shall be provided to any employee affected by a change in salary. The employee shall direct his or her request to the Appointing Authority, who shall hear the appeal. Any resolution suggested by the Appointing Authority must be consistent with the classification and compensation plans. If the Appointing Authority is unable to resolve such a request within a reasonable time, or if the solution is not acceptable to the employee, the matter shall be submitted to the Executive Director.

## 3.17   Career Incentive Plan

1.  A career incentive plan is hereby instituted for employees with five (5) years or more of service.

      (a)  An employee with five (5) years of service whose performance was rated satisfactory or better for the previous review period is entitled to career incentive pay at the rate of one hundred dollars ($100.00) per year of full-time service and fifty dollars ($50.00) per year of part-time service. The rate will be prorated for years that include both full-time and part-time service. For purposes of career incentive pay, the number of years an employee has been in the service of the Regional Transportation Commission shall include all periods of continuous service after the date the employee was most recently hired as a regular Regional Transportation Commission employee, including years of service with Washoe County or Transit Management of Washoe immediately prior to July 1, 1985, for Regional Transportation Commission employees as of July 1, 1985, and former periods of service if each applicable period of separation may be bridged pursuant to the bridging provisions listed below.

      (b)  Temporary employees subsequently hired as regular employees without a break in service, prior to October 1994, shall be credited for temporary service time toward career incentive pay.

2.  A period of separation will be bridged to increase the number of years of service under the following conditions:

(a) A period of separation which resulted from a layoff will be bridged to increase the number of years of service if the employee was subsequently rehired pursuant to Section 11.8.

(b) A period of separation will be bridged if the employee was rehired within one (1) year after the date of commencement of the separation and the employee has been in the continuous service of the Regional Transportation Commission for one (1) year after the date the employee was rehired.

(c) An unpaid leave of absence of more than thirty (30) days will change the anniversary date for career incentive eligibility by the number of unpaid days in excess of thirty (30).

3.  An employee's eligibility for career incentive pay will be reviewed on the anniversary of his or her hire date, as may be adjusted, with full payment to be effective with the first pay period following a determination of eligibility.

## IV. EXAMINATIONS

4.1     Types of Examinations

Competitive examinations may be assembled, unassembled, open or promotional, written, oral, a demonstration of skill, an evaluation of training and experience, or any combination of these. Investigations of relevant character traits, education, experience, tests of intelligence, ability, technical knowledge, manual skill, or physical fitness which the Personnel Officer deems appropriate may be utilized.

4.2     Investigation of Applicants

In order to determine whether applicants meet the minimum qualifications established for examinations or for other purposes as the good of the service may require, the Human Resources Administrator may require certificates of physicians, public officers or others having knowledge of the applicant.  The Human Resources Administrator may require, either before examination or before certification, that documentary evidence be submitted substantiating such facts as criminal history, possession of valid licenses for various purposes or other evidence of identification, fitness and qualification.

4.3     Applications

Every applicant for examination shall file an application in the office of the Regional Transportation Commission or in the United States mail, postmarked by midnight of the date contained in the examination announcement or at such date and time as may be defined in the announcement.  Such applications, when filed, and all other application materials, including examination questions and booklets, shall be the property of the Regional Transportation Commission.

4.4     Eligibility to Compete

1.     Open-competitive examinations for positions in the classified service of the Regional Transportation Commission shall be open to all applicants who are legally entitled and authorized to work in the United States and who meet the qualifications established for the class for which application is being made.

2.     Any applicant who has been convicted of a criminal offense other than a minor traffic violation shall so indicate on the application form.  In addition, the application shall be accompanied by a complete explanation of the conviction. In determining whether to accept the application, consideration shall be given to relevant factors, i.e., recency of the offense, age at time of the offense, conduct during incarceration and parole or probation period, reports from parole or probation officers concerning the applicant's employment record while on parole or probation, relationship of the offense to the position applied for, or other related factors.

3.     Since the appointment decision is the prerogative of the Appointing Authority, all related records shall be made known to the Appointing Authority before such appointment is made.

4.5     Promotional Examinations

Merit and fitness for promotion shall be ascertained through competitive examinations, except as provided in Section 2.6 or elsewhere in this Section. Promotional examinations may be restricted to qualified employees in the department with the vacancy or all departments. Competition in promotional examinations shall be limited to employees who:

1. Have regular or probationary status and have been employed at least six (6) months by the Regional Transportation Commission; and

2. Meet the minimum requirements for the class for which the examination is being held.

Promotional examinations shall not be required when the promotion does not involve a new or vacated position, but instead involves the upgrading of an existing employee within the eligible career progression. For example, a position classified at the journey-level of the career progression may be filled at a lower level for training; then when the incumbent meets the qualifications for the higher level he or she may be upgraded.

4.6     Time for Examinations

Upon giving three (3) days notice to his or her immediate supervisor, a Regional Transportation Commission employee meeting the minimum qualifications for a position shall be permitted a reasonable amount of time to take any Regional Transportation Commission examination during working hours without loss of pay.

4.7     Postponement of Tests

If it is determined that a sufficient number of qualified candidates have not made application for an examination, or for other good reason, the Personnel Officer may postpone or cancel a test or an examination or extend the filing period by giving reasonable public notice thereof.

4.8     Continuous Examinations

The Regional Transportation Commission may conduct examinations and create eligible lists continuously. The names of eligibles who took the same or a comparable examination on different dates may be ranked, for purposes of certification, in the order of final earned ratings. Eligibility from a continuous examination may be deemed to be established as of the date of the examination.

4.9     Announcement of Examinations

Public notice of each examination other than in-house promotional exams shall be given. Examination announcements shall be in such form as the Personnel Officer requires, and shall state the characteristics or knowledge to be evaluated.

4.10    Minimum Passing Scores

The passing score for attaining a place on an eligible list shall be a rating of at least seventy percent (70%). The seventy percent (70%) need not be the arithmetic seventy percent (70%) of the total possible score, but may be an adjusted score based on consideration of the difficulty of the test, the quality of the competition, and the needs of the service. Written scores shall be established before the identification of the competitors' examination papers. The final earned

rating of each candidate competing in an examination shall be determined by the weighted average of the earned ratings on all phases of the examination. Competitors failing to achieve a passing score in any phase shall be disqualified from further participation in the immediate examination.

4.11   Key Copy Review

Within seven (7) working days after an examination grade notification has been postmarked, candidates may, upon request, review a keyed copy of their written examination (except copyrighted, standardized or continuous examinations). Written objections to any items the candidate believes to be improperly keyed, with substantiation, shall be submitted during the review period. Items which a review by the Personnel Officer indicates are incorrect shall be revised or eliminated.

4.12   Corrections of Examination Ratings

If, after review of an appeal filed by any candidate, it is found that any manifest error was made in rating, scoring or computation of the result, the Human Resources Administrator shall make the required correction and place the name of the person on the eligible list in its correct position by virtue of the correction. All other candidates' examinations which were also affected by the error will also be adjusted. Such correction, however, shall not invalidate any appointment previously made from such eligible list.

4.13   Employment of Persons with Disabilities

Full consideration shall be given to the employment of persons with disabilities in positions where they meet the minimum requirements established for the class and successfully compete in the appropriate examination. Examination requirements may be modified to take advantage of the individuals' abilities without detriment to the Regional Transportation Commission service. For purposes of the Regional Transportation Commission Personnel Rules, "disability" includes any condition recognized as disabling under the Americans with Disabilities Act (ADA) guidelines.

# V. CERTIFIED LISTS OF ELIGIBLE CANDIDATES AND SELECTION

5.1    Types of Lists

The kinds of eligible lists and the order of their priority of use shall be in the sequence set forth below. Each list shall be used before names are certified from the next-succeeding list. In addition to using any of these lists except the re-employment list, Appointing Authorities may fill vacancies by rehire or transfer.

    1.    Re-employment lists, consisting of the names of employees who have been laid off, displaced, demoted, or transferred under Section 11.6.

    2.    Divisional promotional lists.

    3.    Department promotional lists.

    4.    Agency-wide promotional lists.

    5.    Eligible lists from open examinations.

5.2    Order of Names

The names of eligibles on promotional and open-competitive eligible lists shall be ranked in the order of their total rating earned in the examination. In case of ties in ratings, such ties shall be broken on the basis of the ratings earned on the part of the examination having progressively lesser weights. If an examination does not consist of weighted portions, all persons receiving the same score will hold the same rank on the eligible list.

5.3    Duration of Lists

Eligible lists may be in effect for one (1) year if the number of remaining interested eligibles in relation to the labor market is sufficient to meet the needs of the Regional Transportation Commission.

5.4    Merger of Lists

Where there has been no material change in the qualification requirements, subject matter, scope, or weights of various parts of the examinations, names on successive lists for the same class may be combined according to the final rating of the eligibles.

5.5    Removal of Names from Eligible Lists

    1.    Names of eligibles shall be removed from the active eligible lists for any of the following causes:

        (a)    Appointment after certification to fill a full-time regular position in the class for which the examination was given.

        (b)    Expiration of the term of eligibility of the eligible list.

(c) Separation of a promotional eligible from the Regional Transportation Commission service.

(d) Failure to respond within the required time to a notice of certification of availability survey.

(e) A statement by the eligible that he or she is not willing to accept any type of appointment from the eligible list.

(f) Any of the causes listed under Section 5.6.

2. The Human Resources Administrator shall notify an Appointing Authority that the person removed from the list is no longer eligible for selection.

5.6    Human Resources Administrator May Refuse to Examine or Refuse to Certify

The Human Resources Administrator may refuse to examine an applicant or, after examination, may refuse to certify a person who comes under any of the following categories:

1. Lacks any of the preliminary requirements established for the examination for the position or employment for which he or she applies.

2. Is physically unable to perform the duties of the position to which he or she seeks appointment.

3. Has been determined as a result of pre-employment drug screening to use illegal drugs or misuse prescription drugs.

4. Is a habitual user of intoxicating liquors to excess.

5. Has been convicted of a crime relating to the duties of the position applied for or has been found guilty of any crime involving moral turpitude or of infamous or notoriously disgraceful conduct.

6. Has made a false statement of any material fact.

7. Has, directly or indirectly, given, rendered or paid, or promised to give, render or pay, any money, service or other valuable thing to any person for, or on account of, or in connection with, his or her examination, appointment or proposed appointment.

8. Has practiced, or attempted to practice, any deception or fraud in his or her application, certificate, examination, or in securing eligibility or appointment.

9. Is not legally entitled to work in the United States.

5.7    Statement of Human Resources Administrator Upon Refusal to Examine or Certify; Appeal to Executive Director

1.    When the Human Resources Administrator refuses to examine an applicant or, after an examination, refuses to certify an eligible person, or removes the name of a person from a certified list, the Human Resources Administrator shall furnish to him or her a statement of the reasons for the refusal to examine or the refusal to certify, as the case may be.

2.    If the Human Resources Administrator refuses to examine an applicant or, after examination, refuses to certify an applicant, such person may appeal to the Executive Director, whose decision shall be final.

5.8    Certification of Names

1.    In response to requests for certification from Appointing Authorities, the Human Resources Administrator shall certify the names, if any, of eligibles from current eligible lists for the class or position to be filled. Certification shall be made in the order of standing on the lists. If there are fewer than ten (10) names on a list, consideration may be given to certification from other lists determined to be appropriate. Such names from other lists shall follow those certified (if any) from the original eligible list for a minimum of ten (10) names.

2.    An Appointing Authority may request selective certification for a particular position if the standard certification does not provide candidates qualified to perform duties of the position satisfactorily. Where selective certification is necessary, the Appointing Authority shall furnish in writing those specialized requirements peculiar to the position and reasons for such requirements. If the Human Resources Administrator, after investigation, determines that the facts and reasons justify selective certification, the Human Resources Administrator may certify the highest ranking eligibles who possess the special qualifications. Determination of special qualifications may require survey of eligibles before certification can be made.

3.    For those examinations conducted on a promotional/open-competitive basis, in addition to the top ten (10) scores being certified from the promotional lists, all open-competitive candidates who achieved a higher score than the lowest promotional candidate certified must also be certified for the vacancy.

4.    If less than ten (10) eligibles are available for appointment, the Appointing Authority may make an appointment from among the remaining eligibles.

5.9    Selection of Candidates

Upon receipt of the certified eligible list, the Appointing Authority may consider for appointment any persons whose test scores are within the top ten (10) scores. There may be more than ten (10) persons on the list. When considering a person for a position, an Appointing Authority may consider related education, experience, performance on selection device(s) administered, reference checks, and/or personal interviews, or other appropriate factors.

A person selected for appointment must be within the top ten (10) scores on an eligible list certified for that specific position, or be eligible for appointment from a transfer or rehire list.  There is no requirement that an Appointing Authority either consider or interview all of the persons within the top ten (10) scores.  The person hired for the position may have any ranking within the top ten (10) scores.  Interviews need not be conducted in rank order.

5.10    Duty of Eligibles to Respond to Request to Consider

Every eligible candidate shall respond within a reasonable time after notice that an Appointing Authority wishes to consider him or her for selection.  A reasonable time shall be three (3) days plus the normal time required for communication to be transmitted by mail to the eligible's place of residence and for the answer to be returned by phone. If an eligible is notified by telegram or courier of the opportunity for interview, he or she shall communicate by telephone with the person or department sending the telegram or message within two (2) working days after the sending of the telegram or message.

## VI. APPOINTMENTS

6.1    Types of Appointments

Vacancies in positions in the classified service may be filled by the Appointing Authority by rehire, transfer, demotion, promotion, appointment from an appropriate eligible list, or by appointment of a person under temporary or provisional appointment, in accordance with the provisions of the Merit Personnel System.

6.2    Rehire, Veterans' Rehire

1.    Any regular employee who has resigned from the Regional Transportation Commission in good standing may be rehired in a position in the same or related class with reasonably similar qualifications within three (3) years from the date of that separation. Employees so rehired shall serve a new probationary period as required for original appointments.

2.    Rehire of veterans shall be in accordance with the provisions of Chapter 418 of the Nevada Revised Statutes.

6.3    Transfer: Kinds of Transfers; Conditions

1.    An Appointing Authority may, with reasonable notice, transfer any regular or probationary employee under his or her jurisdiction from one (1) position to another position in the same class or from a position in one (1) class to a position in a related class with the same pay band and with reasonably similar qualifications. Employees so transferred shall not serve a new probationary period as required for original appointments.

2.    The transfer of an employee from a position under the jurisdiction of one (1) Appointing Authority to a position under the jurisdiction of another Appointing Authority may be made with the cooperation of the Appointing Authorities concerned if the positions are in the same or a related class with the same pay band and have reasonably similar qualification requirements. The position to which the employee is being transferred may be in a location different from that from which he or she is being transferred.

6.4    Transfer: Probationary Periods

Transfer of a regular employee from one (1) class to another, or from one (1) Appointing Authority to another, shall not require the service of a new probationary period.

6.5    Transfer: Protests

If a transfer is protested by an employee as being made for the purpose of harassment or discipline, the employee may appeal such transfer in the manner provided in Section 13.2. The Appointing Authority may require the employee to transfer pending disposition of the appeal.

6.6    Promotion: Probationary Period

Promotion of a regular or probationary employee shall require the service of a new probationary period. If the promoted employee fails to complete the probationary period satisfactorily, reasonable effort will be made to place the employee in the previous position or a similar one to prevent termination.

6.7     Probationary Appointments

A probationary appointment shall be made by the Appointing Authority from the list of names certified if the list contains at least the names of ten (10) eligibles who have indicated their availability for appointment to the position except as provided in Section 5.8, Paragraph 4.

6.8     Temporary Appointments

1.     When services to be performed are required for a limited term not to exceed six (6) months, the Appointing Authority shall indicate the probable duration of employment. Temporary employees may be appointed without examination or certification from an eligible list.

2.     Temporary employees shall not be entitled to any benefits.

3.     Temporary employees may not be appointed to regular positions without examination and certification from an appropriate eligible list for regular positions.

4.     Service under temporary appointment immediately preceding appointment to a regular position in the same class, prior to October 1994, shall be credited for purposes of annual leave and merit salary increases, but shall not be counted as part of the probationary period applicable to the regular position. Such time in temporary service shall be credited for the purpose of calculating accrual rates for sick leave, but no sick leave shall be granted for the time in temporary status. Such time in temporary service shall also be credited toward service credit for purposes of career incentive pay.

6.9     Temporary Appointments for the Disabled

1.     In order to assist persons with disabilities, Appointing Authorities are encouraged to make temporary appointments of disabled persons limited to seven hundred (700) hours under the provision of the State of Nevada 700 hour law. Such persons need not be appointed from appropriate eligible lists but must meet the minimum qualifications established for the class and be certified as eligible for hire under the 700 hour law by the State Division of Vocational Rehabilitation.

2.     Persons with disabilities appointed in accordance with this provision may be appointed to a regular position without further examination upon successful completion of the seven hundred (700) hours.

6.10    Underfilling of Positions

Underfilling is the filling of a position at a title/classification and pay band lower than that approved for the position being filled.

1.   Before a position may be underfilled, it must be approved by the Personnel Officer upon request from the Appointing Authority.  Generally, a position will not be approved for underfilling if there are ten (10) or more available eligibles on a list for the vacant classification.

2.   Some reasons underfilling may be considered are:

   (a)   A current eligible list does not exist for the classification with the vacancy and the Appointing Authority is willing to underfill with a lower level classification in the same or similar job family for which there is an eligible list and promote when the selected candidate becomes qualified, or

   (b)   The vacant position may be filled by an internal transfer or promotion of an employee at a lower classification and the Appointing Authority is willing to accept the candidate and advance the employee to the journey-level when he or she becomes qualified at the higher level.

3.   An employee underfilling a position shall serve a training or qualifying period of not more than twelve (12) months unless modified for good cause by the Personnel Officer upon request from the Appointing Authority. This training/qualifying period is provided for the employee to acquire the minimum skills and qualifications necessary for the journey-level position.

   Upon satisfactory completion of the probationary/qualifying period, the employee shall be advanced to the journey-level position.  Upon advancement, the incumbent shall receive a new anniversary date, shall receive a pro-rated merit increase and bonus, based on the amount of time served in the interim position, and shall begin a new probationary period in the journey-level position consistent with the rules for promotion.

   If an incumbent who is underfilling a position does not successfully complete the probationary/qualifying period and become ready to advance to the journey-level position within the period of time allowed, one (1) of the following will result:

   (a)   If the needs of the organization ultimately require a person to perform at the journey-level position, the incumbent would be terminated.

   (b)   If the needs of the Regional Transportation Commission can continue to be met by the lower level, but similar classification, the position may be reclassified downward to the lower level position.  However, this determination will be based solely on the needs of the organization.

6.11   Voluntary Demotion

An employee who becomes physically or mentally incapable of performing the duties of his or her position, or for personal reasons, may request a demotion to a position in a lower class. Such demotion may be permitted upon approval of the Appointing Authority.

6.12   Reports of Personnel Actions

1.  Each Appointing Authority shall report promptly to the Human Resources Administrator such information as is required in connection with each appointment, separation from service or other change in position or salary or other matters affecting the status of positions or the performance of duties of Regional Transportation Commission employees.

2.  Whenever the Personnel Officer determines that employment, proposed employment or payment of any person as an employee in the classified or unclassified service is in any way contrary to law or the Merit Personnel System, he or she shall so notify the Finance Department after review with the department concerned.  Upon such notice, the Finance Department shall not approve any payment to such person.

Any personnel documents effecting changes in an employee's salary rate and having the identical effective date shall be processed in the following order:

    (a)  Merit salary increase.

    (b)  Reclassification or overall compensation plan adjustment.

    (c)  Promotion or demotion.

6.13    Roster

The official roster of employees maintained by the Regional Transportation Commission is a public record and shall be open to inspection in the Regional Transportation Commission offices with such person officially delegated such record responsibility under reasonable conditions during business hours.  Such official roster shall not include personal information such as home addresses, phone numbers, etc.

6.14    Confidential Records

Salary data furnished on the condition that the sources remain confidential; material to be used in examinations; confidential reports of employers and Appointing Authorities regarding applicants, eligibles or employees; the names and identity of applicants, eligibles and special examiners; and the contents of individual employees' personnel files shall be considered confidential and not open to the public except as required by Nevada Revised Statutes.

## VII. PROBATIONARY PERIOD

7.1     Length of Probationary Period

A twelve (12) month probationary period will be required for all newly hired or promoted classified employees, except as extended under Section 7.2.

7.2     Interrupted Probationary Period

1.    If an employee has not, during the prescribed probationary period, worked the number of months set forth in the classification and compensation plan, the probationary period may, with prior approval of the Personnel Officer, be extended until the employee has worked the required months.

2.    In calculating the required period, overtime work and time other than those variations as specified in Section 8.27 shall not be counted. The Appointing Authority shall report in the prescribed manner to the employee when, because of inadequate time served, the probationary period is to be extended under this Section.

7.3     Reports of Performance

1.    The Appointing Authority shall file a report of performance as prescribed in Chapter IX at the end of the third (3rd), sixth (6th), and eleventh (11th) month of employment.

2.    Copies of all performance reports shall be given to the employee, and the Appointing Authority shall provide for the training of and assistance to the employee to meet the standards of performance for the position to which he or she has been appointed.

7.4     Rejection of Probationary Employees

1.    Probationary employees serve at the pleasure of the Appointing Authority and the Appointing Authority may, at any time during the probationary period, terminate such employees.

2.    Rejection of an employee during the probationary period shall be accomplished by the filing by the Appointing Authority of all performance reports due and a report of separation for the probationary employee affected. The Appointing Authority shall advise the employee, in writing, of the reason or reasons for the termination. However, prior to separation, the Appointing Authority shall review the reasons for the desired separation with the Personnel Officer and coordinate the necessary actions and procedures.

3.    If a report of separation for the employee is not received or postmarked by the close of business on the last day of the probationary period, the employee will be considered to have satisfactorily completed the probationary period and acquired regular status.

# VIII.  ATTENDANCE AND LEAVES

8.1   Normal Work Week

1.   The normal work week for Regional Transportation Commission employees shall be forty (40) hours, except that work weeks of a different number of hours may be established in order to meet the varying needs of different departments.

2.   Except as otherwise provided by statute, the offices of the Regional Transportation Commission shall be kept open on all days, except Saturdays and Sundays and fixed holidays as defined in Section 8.2, from 8:00 a.m. to 5:00 p.m., for the transaction of public business.

8.2   Holidays - Fixed and Floating

1.   Legal holidays for employees of the Regional Transportation Commission are as follows:

(a)   **Fixed Holidays** - Full-time employees will have five (5) eight-hour (8-hour) fixed holidays.  Part-time employees will have five (5) four-hour (4-hour) fixed holidays.

New Year's Day - January 1
Independence Day - July 4
Thanksgiving Day - fourth Thursday in November
Family Day - Friday following Thanksgiving Day
Christmas Day - December 25

and

Any day that may be appointed by the President of the United States for public fast, thanksgiving or as a legal holiday for occasions other than those listed herein.

(b)   **Floating Holidays**

Regular, full-time employees will have a maximum of six (6) eight-hour (8-hour), and regular, part-time employees will have a maximum of six (6) four-hour (4-hour) holidays to be used during a calendar year.

2.   (a)   For employees working a five-day (5-day) work week, if a fixed holiday falls upon an employee's regular day off, the holiday shall be observed the day immediately preceding or the day immediately after the specific holiday.

(b)   For employees having more than two (2) days off per week, (such as someone working four (4) ten-hour (10-hour) days with three (3) consecutive days off), if any fixed holiday falls upon an employee's regular day off, the holiday shall be observed the day immediately before or the day immediately after the specific holiday.  If the fixed holiday falls on the second (2nd) day of three (3) consecutive days off, the holiday shall be observed on either the day

immediately before or immediately after the regular days off at the discretion of the Appointing Authority.

3.  Full-time employees working other than five (5) eight-hour (8-hour) days per week are entitled to the same number of paid holiday hours for fixed and floating holidays as employees working a standard work week.

4.  Floating holiday accruals will be effective with the beginning of each calendar year. For full-time employees beginning employment after January 1, the number of floating holidays accrued shall be prorated at the rate of four (4) hours for every full month remaining in the calendar year. Accruals for part-time employees shall be prorated at the rate of two (2) hours for every full month remaining in the calendar year.

5.  Regular, part-time employees shall be entitled to payment for fixed holidays on a prorated basis based on their regularly scheduled workweek at the time the holiday occurs.

8.3   Compensation for Holidays Worked; Limit on Accrual

1.  The equivalent holiday or cash payment shall be allowed within a reasonable time after the officially designated fixed holiday. Cash payment for hours worked on a fixed holiday shall be paid at the appropriate overtime rate as defined in Section 3.10. Employees must be either in a paid leave status or work the entire working day before and the entire working day after a holiday in order to receive payment for that holiday.

2.  Floating holidays may be used at the employee's discretion, with the approval of the Appointing Authority. Such approval shall not be unreasonably withheld. All floating holidays must be used during the calendar year in which they are accrued.

3.  Terminating employees shall not be compensated for unused floating holiday hours.

8.4   Temporary Employees Not Compensated for Vacation or Holidays On Which They Do Not Work

1.  Temporary employees shall not be compensated for holidays on which they do not work. Such employees, however, who are required to work on holidays shall be compensated at their straight time hourly rate unless otherwise provided by law

2.  Temporary employees shall not be entitled to vacation credit.

8.5   Vacation Accrual Rate - Full-Time Employees

1.  On the day following the completion of six (6) months continuous service each employee who is employed full-time is granted fifty-two (52) hours vacation leave credit. If an employee terminates before the completion of six (6) months continuous service, no compensation shall be made for vacation leave.

2.  After the completion of six (6) months continuous service, each employee who is employed full-time shall earn vacation credit at the following annual hourly rates:

| | |
|---|---|
| Less than three (3) years of continuous service. | 104 hours |
| Three (3), but less than five (5), years of continuous service. | 120 hours |
| Five (5), but less than seven (7), years of continuous service. | 136 hours |
| Seven (7), but less than ten (10), years of continuous service. | 160 hours |
| Ten (10) but less than fifteen (15) years of continuous service. | 176 hours |
| Fifteen (15), but less than twenty (20) years of continuous service | 192 hours |
| Twenty (20) or more years of continuous service | 200 hours |

Vacation shall be credited at the end of each payroll period and shall be prorated for partial pay periods.

3.  The Executive Director may grant new directors, upon hire, a higher accrual rate than the standard rate for vacation time based upon credit for previous years of relevant experience, up to a maximum of seven years.

4.  For the purpose of computing credit for vacation, each employee is considered to work not more than forty (40) hours each week and overtime hours worked do not contribute towards vacation credit.

5.  For purposes of vacation credit, the number of years an employee has been in the continuous service of the Regional Transportation Commission, Washoe County, or Transit Management of Washoe includes all periods of continuous service after the date the employee was last hired as a regular employee and includes former periods of service if each applicable period of separation may be bridged pursuant to the following Subsection.

6.  A period of separation may be bridged to increase the number of years of service under the following conditions:

    (a)  A period of separation which resulted from a layoff may be bridged to increase the number of years of service if the employee was subsequently rehired pursuant to Section 11.8.

    (b)  A period of separation may be bridged if the employee was rehired within one (1) year after the date of commencement of the separation and the employee has been in the continuous service of the Regional Transportation

Commission, Washoe County, or Transit Management of Washoe for one (1) year after the date the employee was rehired.

8.6    Vacation Accrual Rate - Part-Time Employees

On the day following the completion of six (6) months continuous service, each part-time employee shall be entitled to vacation credit pro-rated on the basis of the rates established in Section 8.5 for full-time employees. If an employee who is paid by the hour works more than forty (40) hours per week, the hours which exceed forty (40) are not included in computing vacation with pay.

8.7    Vacation Accrual for Employees Holding More Than One Position; Hourly Paid Employees

An employee who holds two (2) or more part-time positions in Regional Transportation Commission service may combine the time in both positions for purposes of computing credit for a vacation with pay. A full-time employee shall not be engaged in additional part-time work for the Regional Transportation Commission. Combined part-time positions within the Regional Transportation Commission shall not aggregate more than forty (40) hours per week total work time, except in the case of authorized overtime. Such overtime shall not be credited for purposes of vacation with pay.

8.8    Time When Vacation Shall Be Taken

The time when vacation leave may be taken shall be determined by the Appointing Authority after considering the needs of the department and the seniority and wishes of the employees. For those employees who are not eligible for overtime pay, specifically the Executive Director, Deputy Executive Director, Department Directors, and employees officially assigned as 'acting' in one of those capacities, no deduction shall be made for absences of less than one (1) day.

8.9    Maximum Vacation Accumulation

Vacation credit may be accumulated from year-to-year, but may not exceed three hundred sixty (360) hours on February 1 of each year. Amounts in excess of three hundred sixty (360) hours on February 1 shall be forfeited. At the employee's election, any amount in excess of two hundred forty (240) hours, but less than three hundred sixty (360) hours, may be compensated in cash at the same hourly rate as the employee is earning on February 1.

Vacation leave must not be granted if it exceeds the vacation credit earned.

8.10   Cash Payment for Accrued Vacation:   Death of Employee Entitled to Unused, Accumulated Vacation

1.    Except as otherwise provided in this Section, upon separation from service for any cause, an employee who has worked continuously for six (6) months and is eligible to use accumulated vacation leave shall be paid a lump sum payment for any accumulated and unused vacation earned through the last day worked. If the date is earlier than the last day of the pay period, the vacation shall be prorated. Cash payment for accrued vacation upon separation of service shall occur on or before the next regular pay day.

2.   If an employee dies and was entitled to accumulated annual leave under the provisions of the Merit Personnel System, the heirs of such deceased employee who are given priority to succeed to the employee's assets under the laws of intestate succession of this state, or the executor or administrator of the employee's estate, upon submitting satisfactory proof of entitlement to the Regional Transportation Commission, shall be paid an amount of money equal to the number of hours of earned or accrued annual leave multiplied by the hourly salary or wages of such deceased employee.

8.11   Records and Reports

The Regional Transportation Commission shall keep accurate records of earned and used vacation. Such records and reports shall be made available to the Appointing Authorities as requested.

8.12   Accrual of Vacation Credit on Separation and Rehire

Upon separation from service in good standing, an employee who is rehired within three (3) years from the date of separation shall accumulate, after completion of three (3) additional years of satisfactory service, annual leave credits based on total Regional Transportation Commission service.

8.13   Sick Leave Accrual Rate

1.   Each full-time employee in Regional Transportation Commission service for less than ten (10) years shall be credited with sick leave at the rate of ten (10) hours for each month of full-time work or paid leave status credited on a biweekly basis. Sick leave is cumulative from year to year.

2.   Each full-time employee in the service of the Regional Transportation Commission for ten (10) or more continuous years of service shall be credited with sick leave at the rate of twelve (12) hours for each month of full-time work or paid leave status credited on a biweekly basis, which is cumulative from year to year.

3.   Part-time employees shall be credited with prorated sick leave.

4.   Temporary employees shall not be entitled to earn sick leave credit.

5.   For purposes of sick leave accrual, the number of years an employee has been in the continuous service of the Regional Transportation Commission, including Washoe County, or Transit Management of Washoe employment after July 1, 1973, shall be considered.

6.   An employee who is laid-off and is re-employed shall have sick leave accrued at the time of layoff restored unless the employee received payment upon separation as provided in Section 8.15.

8.14   Sick Leave Accrual for Employees Holding More Than One Position; Hourly Paid Employees

The provisions of Section 8.7 shall likewise apply to the earning of sick leave for employees holding more than one (1) position.

8.15    Sick Leave Payment on Separation

1.    An employee separated from service shall earn sick leave only through the last working day for which he or she is entitled to pay.  Upon separation from service in good standing, an employee with ten (10) years or more employment shall be compensated for total accrued sick leave at the rate of one (1) hour's pay at the regular hourly rate for every three (3) hours of sick leave accrued.

2.    Employees who retire after five (5) years employment or and who immediately begin drawing retirement benefits from the Public Employees' Retirement System of Nevada (PERS) upon leaving Regional Transportation Commission employment shall be compensated for total accrued sick leave at the rate of one (1) hour's pay at the regular hourly rate for every three (3) hours of sick leave accrued.

3.    Upon the death of an employee, the employee's heirs shall be compensated for total accrued sick leave at the rate of one (1) hour's pay at the deceased employee's regular hourly rate for every three (3) hours of sick leave accrued. There shall be no minimum service requirement for deceased employees.

4.    Employees in the unclassified service who are terminated for reasons other than misconduct or unsatisfactory performance of their duties shall be compensated for total accrued sick leave at the rate of one (1) hour's pay at the regular hourly rate for every three (3) hours of sick leave accrued.

5.    Payment of accrued sick leave under this provision shall occur on or before the next regular pay day.

8.16    Use of Sick Leave

1.    An employee is entitled to use accrued sick leave:

(a)    When unable to perform the duties of the employee's position due to sickness, injury, pregnancy, or childbirth;

(b)    When quarantined;

(c)    When receiving required medical or dental service or examination;

(d)    For adoption of a child;

(e)    In the event of an illness in the employee's immediate family where such illness requires his or her attendance.  For purposes of this paragraph, "immediate family" means the employee's spouse, parents, step-parents children, step-children, and, if living in the employee's household, includes relations by marriage corresponding to those relatives and foster children, natural brothers and sisters;

(f)     For any leave in accordance with the Family and Medical Leave Act of 1993 (FMLA).

(g)     In the event of a death in the employee's immediate family, the employee may use accrued sick leave not-to-exceed five (5) days for each death. For purposes of this paragraph, "immediate family" means the employee's spouse, parents, step-parents, children, step-children, brothers, sisters, grandparents, grandchildren, aunts, uncles, nieces, nephews, or relations by marriage corresponding to those relatives and, if living in the employee's household at the time of death, includes foster children and foster parents.

(h)     For those employees who are not eligible for overtime pay, specifically the Executive Director, Deputy Executive Director, Department Directors, and employees officially assigned as 'acting' in one of those capacities, no deduction shall be made for absences of less than one (1) day.

2.     In lieu of authorizing the use of leave, other than Family and Medical Leave Act of 1993 (FMLA) leave, for long-term illness or injury, the Regional Transportation Commission may place the employee in a position where he or she is physically capable of performing the duties.

8.17     Sick Leave When Receiving Industrial Insurance or Occupational Diseases Act Benefits

1.     When a Regional Transportation Commission employee is eligible for benefits under Chapter 616 or 617 of the Nevada Revised Statutes (Nevada Industrial Insurance and Occupational Diseases Acts), he or she shall not be required to use accrued sick leave for the period during which Nevada Industrial Insurance or Nevada Occupational Diseases Act benefits are being received.

2.     Any employee who suffers a job-related injury or illness in the course of employment with the Regional Transportation Commission for which benefits are paid under Chapter 616 or 617 of the Nevada Revised Statutes may, at the option of the employee, apply for and receive accrued sick leave during the course of such disability. The amount of sick leave benefit paid to such employee for any pay period shall not exceed the difference between his or her normal salary and the amount of any benefit received, exclusive of payment of hospital or medical expenses.

3.     An employee shall be entitled to receive all unused accrued sick leave and accrued annual leave upon termination from employment with the Regional Transportation Commission as a result of a permanent disability, whether or not such disability is a result of an injury or illness for which the Nevada Industrial Insurance System pays benefits.

8.18     Approval and Substantiating Evidence for Sick Leave

1.     The Appointing Authority shall approve sick leave only after having ascertained that the absence was for an authorized reason. For absences in excess of three (3) days or cases of suspected abuse, the employee may be required to submit substantiating evidence, including but not limited to a physician's certificate.

2.   For Family and Medical Leave Act of 1993 (FMLA) leaves, the Appointing Authority may request substantiating evidence as permitted in the FMLA.

8.19    Earning of Sick Leave While On Leave

Employees in a paid leave status shall earn sick leave while on leave except as provided in Section 11.2, <u>Payment of Benefits Upon Separation</u>. If the employee is on leave without pay, no sick leave shall be accrued. When the employee is in paid-leave status a portion of a week and unpaid-leave status a portion of a week, sick leave accrual shall be prorated.

8.20    Advanced Sick Leave

The Executive Director may approve the advancement of sick leave to an employee who has, or whose family member has, an illness or situation requiring the employee's time away from work and who has exhausted all of his or her accrued sick leave and other types of leave. This advancement is intended to be used for serious situations.

Up to seven (7) days may be advanced which the employee will repay from future accruals upon return to work. In order to have sick leave advanced, there must be reasonable assurance that the employee will return to work to earn and repay the advanced leave.

Requests for advancement of sick leave may be submitted directly to the Executive Director, the employee's Department Director, or the Human Resources Administrator.

8.21    Catastrophic Sick Leave Bank

A bank of sick leave may be created by the Regional Transportation Commission from voluntary donations by Regional Transportation Commission employees. Each employee may at his or her own option donate up to forty (40) hours per calendar year to the sick leave bank. Employees may not let their own sick leave balance fall below one hundred (100) hours due to donations. This program is strictly voluntary. Donations to the sick leave bank will not affect an employee's eligibility to earn personal days.

To qualify for use of sick leave from the bank, an employee must have exhausted all of his or her own sick and other types of leave and have a situation which qualifies under the definition of a catastrophe. Conditions considered catastrophic include the employee being unable to perform the duties of his or her position because of a serious illness, operation, or accident which is life threatening or which will require a lengthy convalescence; or a serious illness, operation, or accident which is life threatening or which will require a lengthy convalescence in the employee's immediate family. The sick leave bank is intended to be used for serious calamities.

Approvals for use of banked leave must be substantiated by a medical certification of the condition necessitating the leave. Requests for use may be submitted directly to the Executive Director, the employee's Department Director, or the Human Resources Administrator. Approval of requests shall be at the discretion of the Executive Director. Employees receiving banked leave are not required to pay it back, but are encouraged to do so.

8.22    Records and Reports

The Regional Transportation Commission shall keep accurate records of earned and used sick leave. Such records and reports shall be made available to Department Directors as requested.

8.23   Personal Leave

1.   A full-time employee eligible to receive sick leave credit who uses no more than thirty-two (32) hours of sick leave in a calendar year shall be credited with sixteen (16) hours of personal leave January 1 of the following year.

2.   A full-time employee eligible to receive sick leave credit who uses more than thirty-two (32) hours but no more than forty (40) hours of sick leave in a calendar year shall be credited with eight (8) hours of personal leave at the end of the first full pay period in January of the following year.

3.   A part-time employee eligible to receive sick leave credit who uses no more than sixteen (16) hours of sick leave in a calendar year shall be credited with eight (8) hours of personal leave January 1 of the following year.

4.   A part-time employee eligible to receive sick leave credit who uses more than sixteen (16) hours but no more than twenty (20) hours of sick leave in a calendar year shall be credited with four (4) hours of personal leave at the end of the first full pay period in January of the following year.

5.   To be eligible for credit for personal leave under this Section, an employee must be in pay status (either working or paid leave) during the entire calendar year.

6.   All personal leave must be used in the calendar year in which it is credited. Personal leave does not accrue and, if not used within the calendar year in which it is credited, is forfeited. Under no circumstance shall cash be paid for unused personal leave.

8.24   Leaves of Absence

1.   A leave of absence may be granted to any employee occupying a regular full-time or part-time position. A leave of absence shall be granted only to an employee who desires to return to Regional Transportation Commission service and who, at the time the leave is granted, has a satisfactory service record.

2.   Leaves of absence for thirty (30) working days or less in any calendar year may be granted upon the approval of the Appointing Authority. Leaves for a longer period and up to one (1) year may be granted upon the recommendation of the Appointing Authority and the approval of the Regional Transportation Commission except leaves granted in accordance with the Family and Medical Leave Act of 1993 (FMLA) or any other leave mandated by statute.

3.   The Regional Transportation Commission, upon the recommendation of the Executive Director, may grant leaves of absence without pay in excess of one (1) year for the purpose of attending extended courses of training at a recognized college or university, accepting a position in the unclassified service, and for other purposes deemed beneficial to the public service.

4.   A leave of absence shall not be granted to an employee who is accepting another position in the classified service or who is leaving Regional Transportation Commission service to accept other employment, except as provided below.

5.   Types of recognized leaves include, but are not limited to:

   (a)   Education and Training.  A leave of absence without pay may be granted to an employee who desires to attend school or college or to enter training to improve the quality of the employee's service. Employees taking authorized educational leave may elect to use accumulated vacation credit.

   (b)   Illness, Injury or Pregnancy.  Employees who are temporarily incapacitated by illness, injury, or pregnancy and who have exhausted their sick leave accumulation and/or Family and Medical Leave Act of 1993 (FMLA) allowance may be granted further leave of absence without pay.

   (c)   Family and Medical Leave.  The Family and Medical Leave Act of 1993 (FMLA), allows an "eligible employee" to take an unpaid leave of absence for up to twelve (12) weeks during each calendar year (January through December) under certain qualifying conditions.  An employee is eligible if employed by the Regional Transportation Commission for at least one (1) year and worked one thousand two hundred fifty (1,250) hours during the previous twelve (12) months.  Upon return to work, the employee is guaranteed his or her old job or an equivalent at the same rate of pay and benefits.

   To qualify for a Family and Medical Leave Act of 1993 (FMLA) leave the employee must make a request and submit it with the necessary documents to his or her Department Director and the Human Resources Administrator. The employee may be granted FMLA leave under the following conditions:

      (1)   To care for the employee's child after birth, or placement for adoption or foster care.  Leave must be taken within the first (1st) year after the event.  If the Regional Transportation Commission employs both husband and wife, leave is limited to a combined total of twelve (12) weeks.

      (2)   To care for the employee's spouse, child, or parent, who has a serious health condition.  Medical certification may be required.

      (3)   When an employee has a serious health condition that makes the employee unable to perform his or her essential job functions. Medical certification may be required.

   The employee may choose to substitute any paid leave (annual/vacation leave, personal leave, or compensatory leave) for any unpaid leave time for any Family and Medical Leave Act of 1993 (FMLA) qualifying purpose.  In addition, medical sick leave may be substituted to care for a seriously ill family member as defined by the FMLA, or the employee's own serious health condition, but only to the extent that the sick leave would be allowed under Regional Transportation Commission policy.

(d) <u>Assignment with Another Governmental Agency</u>.  Employees who are loaned to another governmental agency for the performance of a specific assignment may be granted leave of absence without pay.

(e) <u>Jury or Court Duty</u>.  A leave of absence with pay shall be granted to any Regional Transportation Commission employee who serves on a jury or as a witness for the Federal Government, the State of Nevada, or a political subdivision thereof.  The employee shall be paid regular salary while on court leave and retain any compensation fees or reimbursement for travel and per diem received.  Court leave shall not be charged against an employee's vacation credit.

(f) <u>Voting</u>.  Leaves of absence with pay may be granted by the Appointing Authority to allow employees time off to vote, pursuant to the provisions of Nevada Revised Statute 293.463.

(g) <u>Emergency Volunteer</u>.  Leaves of absence with pay shall be granted to classified and unclassified employees who are volunteer members of any regular, organized, and recognized emergency tactical team in Washoe County or other reasonably accessible location, to protect life or property in emergency situations occurring during their normal Regional Transportation Commission working hours.

(h) <u>Military Service</u>.  Any employee who is an active member of any branch of military service recognized under the Federal Uniformed Services Employment and Re-employment Rights Act effective December 12, 1994, (USERRA) is eligible for military leave from the Regional Transportation Commission.  Leave will be granted in accordance with the provisions of the Federal law.

Persons serving in the uniformed services for up to thirty (30) days must report back to their civilian jobs "no later than the beginning of the first full calendar day following the completion of the period of service and the expiration of eight hours after allowing for the transportation of the person from the place of service to the person's residence."

A person leaving for a period of training or service lasting thirty-one to one hundred eighty (31-180) days must apply for re-employment within fourteen (14) days after release; if the period of service was one hundred eighty-one (181) days or more, the deadline for re-employment is ninety (90) days.

A person may serve on active duty for a cumulative period of up to five (5) years and still retain employment rights.  Periodic and special training and voluntary or involuntary service in support of emergency or contingency operations will not count toward the five-year (5-year) limit.

A person serving for up to thirty (30) consecutive days of military training or service may continue personal and family health insurance coverage provided through the Regional Transportation Commission and will be required to pay only the employee share of the cost of such coverage.

A person serving more than thirty (30) days may elect to continue health insurance coverage through the Regional Transportation Commission for up to eighteen (18) months or the period of service, whichever is shorter, but will be required to pay the entire premium for dependents and could be required to pay up to ten percent (10%) of the employee premium.

An employee leaving the Regional Transportation Commission for military training or service must give prior oral or written notice regardless of the category of the service. The Federal Uniformed Services Employment and Re-employment Rights Act effective December 12, 1994, (USERRA) authorizes the reserve component (in which the service or training is to be performed) to give notice to the employer.

8.25    Reporting of Absences

An Appointing Authority or employee who is absent from duty shall report the reason to his or her supervisor immediately on the day of absence where possible and, except in exceptional circumstances, no later than noon on the following day.

8.26    Absence Without Leave

All unauthorized or unreported absences shall be considered absence without leave, and deduction of pay shall be made for each period of such absence. Such absence is grounds for disciplinary action or discharge and will serve to interrupt continuous service, as defined in the Merit Personnel Resolution.

8.27    Adjustments in Anniversary Dates: Continuous Service

1.    The following shall be the equivalent of Regional Transportation Commission service for purposes of career incentive pay, leave accrual, rate of leave accrual, longevity, and merit increase:

(a)    Military leave for active service pursuant to an involuntary call-up, for the duration of the call-up, provided that the employee resumes active service with the Regional Transportation Commission within ninety (90) days following discharge from military service.

(b)    Authorized military leave for training duties, not to exceed fifteen (15) working days in any one (1) calendar year.

2.    Authorized leave without pay shall not be deemed a break in continuous qualifying service.

3.    Authorized leave without pay for thirty (30) days or less shall not result in a new anniversary date. Authorized leave without pay in excess of thirty (30) days shall result in an adjustment to the employee's anniversary date equal to the number of leave days taken without pay in excess of thirty (30) days. The new anniversary date shall apply to all purposes, i.e., merit pay, career incentive pay, leave accrual, etc.

# IX. EVALUATION OF PERFORMANCE

9.1    Performance Evaluation:  Timing and Method

1.    Each Appointing Authority shall provide for an annual evaluation of all employees, other than those in temporary appointments or positions, in his or her department. The purpose of employee performance evaluations is to provide feedback to the employee regarding his or her progress in achieving the standard of work performance established for his or her position. The employee shall receive quarterly feedback regarding the employee's progress and a written evaluation of his or her job performance, and at least annually during the month prior to the anniversary date the employee will receive a formal performance evaluation. Any subsequent salary adjustment will be effective in accordance with Section 3.7. Probationary employees shall be further evaluated in accordance with Section 7.3.

2.    Employees taking a leave of absence in excess of thirty (30) days shall have an evaluation completed by their immediate supervisor prior to departing on the leave. This evaluation shall be for the portion of the anniversary year completed prior to taking leave. This evaluation shall be for the purpose of reference when completing the annual evaluation after the employee returns from leave and the anniversary date is adjusted.

3.    When an employee is selected for promotion, the pre-promotion supervisor shall complete a performance evaluation form covering the portion of the year served prior to the promotion. If rated satisfactory or above, the employee shall be eligible for a pro-rated merit increase for the portion of the year completed in the current position in accordance with Section 3.7.

4.    All evaluations shall include a discussion between the employee and the immediate supervisor for the purposes of providing feedback on the employee's performance and to develop goals and methods toward enhanced performance and personal development. After the discussion between the employee and the supervisor, the evaluation report shall be forwarded to the Executive Director.

9.2    Standard Performance

Whenever reference is made in the Regional Transportation Commission Personnel Rules to satisfactory service or standard performance, it is referring to the determination by the Appointing Authority as to whether or not the employee's performance meets or exceeds the satisfactory standard of work performance established for his or her position. The Appointing Authority documents this determination upon an evaluation form.

9.3    Copies of Performance Evaluation Reports

Each employee shall receive a copy of his or her evaluation, and the original will be retained in the employee's file. Copies of the evaluation shall be available to the employee, the direct supervisor, and the Executive Director.

# X. TRAINING

### 10.1    Training: Responsibility of Appointing Authority

The Appointing Authority shall be responsible for the provision of orientation, induction and on-the-job training and for the continuing development of the employees in his or her department.

### 10.2    Training in New Processes

Whenever the duties of a position are to be materially changed by the introduction of new machinery or processes requiring different skills and knowledge, any regular or probationary employee affected by the change shall be given reasonable opportunity, at the expense of the Regional Transportation Commission, to learn to perform the new duties and to qualify for status in any new class of positions required for such work.  An employee who, after a reasonable training period, qualifies for appointment in the different class shall be deemed to possess the specific education, experience or other requirements for such class and shall be appointed thereto with the same status which he or she last had in the previous class. Employees who do not qualify for such appointment shall be reassigned to other duties appropriate to their previous class, or be laid off in accordance with the provisions of the Merit Personnel System concerning layoff.

### 10.3    Specialized Training

In order to meet the needs of Regional Transportation Commission service for scientific, technical, professional, and management skills which cannot be provided through available in-service training, the Appointing Authority may arrange for the provision of such training through recognized educational or training facilities.

# XI. SEPARATIONS

11.1    Resignation

An employee may resign by notifying his or her Appointing Authority in writing of the reason therefore and the effective date thereof.  Failure to give at least two (2) weeks' notice constitutes cause for denial of future employment with the Regional Transportation Commission. The Appointing Authority shall report the resignation in writing to the Personnel Officer.  The written resignation of the employee shall be attached to the action form or the employee shall sign the action form stating the specific reason for resigning and certifying that the resignation is of his or her own free will.  No undated resignation may be accepted.

11.2    Payment of Benefits Upon Separation

1.    All unpaid wages will be paid to a separating employee calculated to the date and time of separation.

2.    All accrued but unused vacation time will be paid.  Employees resigning in good standing may elect to remain on the payroll to use vacation time beyond the last day of work; however, such employees shall not accrue additional vacation, sick leave, floating holidays, or personal leave time during this vacation time.

3.    Separating employees will be paid a lump sum for all unused compensatory time.

4.    Separating employees may be eligible for a lump sum payment for accrued sick leave in accordance with Section 8.15.

11.3    Contents of Action Form:  Review, Recommendation and Appeal

1.    The action form on which an employee resigns shall contain a statement of all appeal rights of a classified employee and the fact that the employee is relinquishing all appeal rights by resigning.  The form shall also contain a statement that a classified employee may only appeal the resignation if he or she alleges that the resignation was obtained against his or her will.  Such an appeal must be received by the Human Resources Administrator within seven (7) calendar days of the date of resignation.

2.    After review of the facts presented by the classified employee and the Appointing Authority, the Human Resources Administrator may make a recommendation to the Appointing Authority.  If the Appointing Authority does not accept the recommendation, the employee may appeal the matter to the Executive Director within seven (7) calendar days, for a final decision.

11.4    Layoff: Formula

Whenever it becomes necessary for classified employees in Regional Transportation Commission employment to be laid off because of lack of work or lack of funds or other legitimate reason, the following procedure shall be used:

1.    The Executive Director shall determine whether a reduction in personnel shall occur.  The layoff procedure for a reduction applies to an entire department.

2. The Executive Director shall determine in what class series and in which classes within that class series reductions in staff will have the least detrimental effect on departmental operations and shall specify layoff accordingly. A "class series," for purposes of layoff, is defined as a normal line of progression from trainee, entry or preparatory levels to supervisory or administrative levels within a job specialty. Within a class series, the minimum qualifications, tests for fitness, duties, and responsibilities are similar but different in level.

3. Within the department and in the class series selected and the class specified, all non-regular employees of the department shall be laid off before any regular employees and in the following order: temporary, provisional, probationary. A person who attained regular status but is serving a new probationary period because of a promotion is considered a regular employee for purposes of layoff. An employee who has been employed in a class series for a period of time equivalent to the minimum required to complete a probationary period, but because of promotions within that class series has never completed a probationary period, shall be considered a regular employee for purposes of layoff.

4. If additional reductions are necessary, regular employees shall be laid off based on the following formula:

   (a) A combination of performance evaluation and seniority will be utilized. All seniority points must be calculated during the first (1st) day of employment during the employee's most recent continuous regular Regional Transportation Commission, Washoe County, or Transit Management of Washoe employment. Periods of separation may not be bridged to extend such service unless the separation was a result of a layoff, in which case bridging will be used if the employee has been re-employed in a regular position in the class series within the period of the employee's layoff eligibility.

   (b) One (1) point will be allowed for each complete month of continuous Regional Transportation Commission service in the class of the layoff or in classes having the same or a higher maximum salary.

   (c) Three-fourths (¾) of one (1) point will be allowed for each complete month of continuous service in all other classes within the class series having a lower maximum salary.

   (d) In addition, each employee's last three (3) performance reports must be considered based on the following:

      (1) Twelve (12) points will be subtracted for each "below standard" report.

      (2) Only performance reports which have been completed thirty (30) days before the notification of layoff (which is sixty (60) days before the actual layoff) will be considered.

(e) Employees with the lowest total points shall be laid off first, in numerical order from low to high. In the event of a tie in the total points, the order of layoff shall be determined by drawing lots.

## 11.5   Layoff: Returnees from Military Service

Employees returning from a period of active military service are entitled to seniority points as if they had been continuously employed by the Regional Transportation Commission. If such an employee had not completed the probationary period prior to entry into military service, he or she must complete it upon return before acquiring regular status. Such an employee must be rehired to the former position or a similar position with the same pay and seniority as the former position. An employee may not be rehired to a position that has already been designated as a layoff category. That is, he or she must not be rehired and immediately terminated. However, if at some time after rehire, the position, in the normal course of events, is properly designated as a layoff class, the employee may be terminated in accordance with Title 38, U.S. Code.

## 11.6   Layoff: Demotions; Displacements; Transfers

1. A regular employee who is laid off is entitled to displace to lower positions in his or her department under either of the following circumstances:

    (a) To a position in any lower class in which he or she formerly held a regular appointment and in which there is an employee with less seniority, or

    (b) To a position in a lower class within his or her existing class series, even though the person had not previously held a regular appointment within the lower class, if there is an employee with less seniority in the lower class.

2. An employee who has been transferred or promoted from one (1) department to a new department and who is subsequently laid off may displace an employee in his or her former department who has less seniority in the class formerly held by the employee in the former department. This interdepartmental displacement provision remains in effect until the employee's seniority in the new department exceeds his seniority in the former department.

3. Regular part-time employees may displace only employees holding regular part-time positions.

4. A regular full-time employee may displace a regular part-time employee with less seniority in the same class or in a lower class under the same conditions governing full-time regular displacements.

5. The employee with the least seniority shall be displaced by the person who is laid off. The employee displaced shall be considered as laid off for the same reason as the person who displaced him or her and shall be eligible to displace in the same manner. If two (2) or more employees have the same seniority to a position in a class, the order of displacement shall be determined by the drawing of lots.

6. In the absence of an election by an employee to waive his or her right to displace another employee, the employee shall displace to a position in the highest class

permissible under this Section. If the employee has the right to displace in two (2) or more classes at the same level, he or she shall displace to the class in which the employee has greater seniority. If the employee has the right to displace in a higher class in more than one (1) department, he or she shall displace to the department in which the employee has the most seniority. If the employee's departmental seniority is equal in two (2) or more classes or departments, he or she shall displace to that class or department in which the employee with the least seniority is working.

7. Any election or waiver by an employee of his or her right to displace another employee must be made in writing.

8. When simultaneous layoffs occur in a class series, the layoff will first be made in the higher class, followed by displacement to the lower class. When displacements to the lower class have been completed, the layoff in the lower class will be made.

9. A department may transfer employees to fill vacancies rather than use a re-employment list if the transfer is to a position within the same class series or if the transfer does not adversely affect other employees. If, for example, a person in a layoff class is qualified for a totally unrelated position in the department, he or she may be transferred to that position in lieu of layoff, but only if such transfer does not result in other employees being forced to accept a lower position. If such a transfer adversely affects other employees, the employee must be laid off, placed on a re-employment list and rehired if a position becomes available.

10. For purposes of this Section, "seniority" means seniority for purposes of layoffs and displacement and is calculated pursuant to Section 11.4.

11.7   Layoff: Written Notice

All regular employees to be laid off shall be given written notice of the layoff at least thirty (30) calendar days before the effective date thereof. A copy of the layoff computations as well as a copy of the notice of layoff to the employee shall be sent to the Executive Director for approval.

11.8   Layoff: Rehire; Preference For Employees Electing Temporary Demotion; Status, Dispositions of Accrued Sick Leave

1. The names of regular employees who have elected displacement or temporary demotion pursuant to the provisions of Section 11.6 must be placed first upon the re-employment list for the class of position involved, in reverse order of displacement or temporary demotion within the department in which the employees elected displacement or temporary demotion. The employee who was last to displace or demote is the first on the re-employment list and must be given preference in reinstatement. Each person on such a list retains eligibility for appointment for an unlimited period of time.

2. The names of regular employees laid off must be placed upon the re-employment list for the class of position involved in the layoff, in reverse order of layoff after the names of regular employees who have elected displacement or temporary

demotion. Each person on such a list retains eligibility for appointment from the list for a period of one (1) year after the date his or her name was placed on the list. A regular employee who has been laid off and is rehired in the same department is restored to regular status.

3.  Employees who are rehired by the Regional Transportation Commission within one (1) calendar year after they are laid off are entitled to reinstatement of accrued and unused sick leave remaining to their credit at the time of their layoff.

## XII. DISCIPLINARY AND CORRECTIVE ACTIONS

The appropriate supervisory actions to be taken differ if an employee is performing unsatisfactory work or is engaging in misconduct. Although the ultimate action of dismissal or demotion may be the same for misconduct or poor performance, the goal and the supervisor's reasons are different and this should be made clear to the employee. It is not the organization's goal to punish or discipline an employee for being unable to perform his or her work satisfactorily. Efforts will be made to assist the employee to improve and correct poor work performance and bring it to a satisfactory level. If this is not successful, demotion or dismissal may result but not as a punitive measure.

Misconduct is viewed as something an employee can cease at any time he or she chooses, rather than something that must be learned. Therefore, it is appropriate to use disciplinary measures to dissuade an employee from unacceptable behavior or misconduct in the workplace.

### 12.1    Disciplinary Warning and Reprimand

Whenever an employee engages in misconduct, including but not limited to violation of Regional Transportation Commission Personnel Rules or Management Policies, the employee's supervisor shall inform the employee promptly and specifically. If appropriate and justified, and following a discussion of the matter, the employee's supervisor may take one (1) or more of the following steps:  oral warning, written reprimand, demotion, suspension, or dismissal.  The action taken will depend upon the nature and severity of the problem.

In situations where an oral warning has not resulted in correction of the condition or where more severe initial action is warranted, a written reprimand may be issued to the employee and a copy placed in the employee's personnel file.  Employees will be asked to sign all written reprimands indicating their receipt; however, refusal to sign will not prevent the document from being placed in their personnel file. If warranted, more serious disciplinary action may be taken as outlined in Sections 12.2 and 12.3.

### 12.2    Suspension

If the written reprimand is not effective, or in those cases where the seriousness of the offense or condition warrants it, an employee may be suspended without pay by his or her Appointing Authority for a period not to exceed thirty (30) calendar days.

### 12.3    Involuntary Demotion and Dismissal

When other forms of disciplinary or corrective action have proven ineffective or when the seriousness of the offense or condition warrants it, the Appointing Authority may demote or dismiss the employee.

12.4    Notice of Unsatisfactory Performance

When an employee's work performance is unsatisfactory, the employee's supervisor shall inform the employee promptly and specifically. If appropriate and justified, and following a discussion of the matter, the employee's supervisor may take one (1) or more of the following steps: oral notice, written notice, demotion, or dismissal. The action taken will depend upon the nature and severity of the work deficiencies or problems.

In situations where an oral notice of unsatisfactory performance has not resulted in correction or improvement of the condition or where more severe initial action is warranted, a written notice will be issued to the employee and a copy placed in the employee's personnel file. Employees will be asked to sign such notices indicating their receipt; however, refusal to sign will not prevent the document from being placed in their personnel file. If warranted, more serious corrective action may be taken as outlined in Sections 12.2 and 12.3.

12.5    Procedure for Suspension Without Pay and Demotion

An order by the Appointing Authority to suspend or demote a regular classified employee shall:

1.    Be in writing.

2.    State specifically the action to be taken.

3.    State specifically the cause or causes for the action to be taken.

4.    State the effective date of such action.

5.    State that the employee has seven (7) calendar days within which to appeal the action in accordance with Chapter XIII of the Regional Transportation Commission Personnel Rules. The appeal must be in writing and must state the basis for the appeal.

6.    Be served on the employee, either personally or by posting by certified mail no later than twenty-four (24) hours after the effective date of the action.

12.6    Procedure for Notice and Discharge

Before taking action to discharge an employee, the employee will generally be given the opportunity to respond to the charges against him or her. This will be done at a meeting between the supervisor and the employee. A final decision to discharge will generally be withheld until such a meeting takes place and the employee has the opportunity to present any information which may effect the decision.

Upon making a decision to discharge an employee having regular (non-probationary) status in the classified service. the Appointing Authority shall serve on the employee, either personally or by posting by certified mail, a written notice of discharge which shall contain the following:

1.    A statement of the action to be taken.

2.    A statement of the charges or performance inadequacies upon which the discharge is based.

3.   A statement of the effective date of the discharge.

4.   A statement that the employee has seven (7) calendar days to appeal the discharge in accordance with Chapter XIII of the Regional Transportation Commission Personnel Rules. The appeal must be in writing and must state the basis for the appeal.

The notice of discharge shall be served on the employee, either personally or by posting by certified mail, no later than forty-eight (48) hours after the effective date of the action.

12.7   Suspensions Due to Pending Criminal Charges

1.   An Appointing Authority, upon giving notice as provided in Section 12.5, may immediately suspend without pay an employee against whom there is a pending criminal charge which adversely and directly affects Regional Transportation Commission service, conflicts with continued employment, or is seriously and substantially disruptive of department operations. Pending criminal charges exist when an employee has been named a defendant in a criminal complaint or an information/indictment filed in any court.

2.   Except as otherwise provided in this Section, if the employee is subsequently acquitted of the charge(s) or if the charge(s) or case is dismissed, the employee is entitled to be reinstated and to have all back pay and benefits restored.

3.   The rights provided to an employee under Subsection 2 shall not obligate the Regional Transportation Commission to pay back-pay and benefits if its own investigation of alleged or suspected violations of Regional Transportation Commission Rules and Policies results in the employee's suspension or termination.

## XIII. APPEALS AND HEARINGS

13.1    Response to Notice of Action

An employee who is served with a notice of discipline, unsatisfactory performance, discharge, or demotion, has seven (7) calendar days from receipt of the notice or from the date of posting by certified mail, whichever is less, to respond to the Appointing Authority in writing to appeal the action.

13.2    Appeal from Discipline or Actions Taken for Unsatisfactory Performance

All parties so involved must act in good faith and strive for objectivity, while endeavoring to reach a solution at the earliest possible step of the procedure.  The employee shall have the assurance that filing a response and/or appeal will not result in reprisal of any nature.

The employee shall have the right to be represented or accompanied by a representative of his or her choice at all stages of any disciplinary or corrective procedure.

The employee shall be afforded opportunity to have access to all information, as required by law, upon which a proposed disciplinary action is based.  Copies of all documents reasonably necessary to prepare a defense to the proposed action and which are within the control of the employer shall be provided at no charge to the employee.

If the action is appealed by the employee, the effective date of the action shall not be affected. It shall be carried out as of the date set by the Appointing Authority.  If the employee is successful in having the action overturned or reduced in severity by the Department Director or the Executive Director, he or she will receive his or her normal rate of compensation for a suspension, will be reinstated to his or her previous position if demoted or discharged, or other appropriate remedial action shall be taken.

An appeal of disciplinary or corrective action shall adhere to the following procedure:

1.    A regular, classified employee who has been disciplined, demoted, or discharged may, within seven (7) calendar days of receipt of the notice of action, or from the date of posting by certified mail, whichever is less, appeal the action.  The appeal shall be in writing and shall be filed with the Department Director.

    If the employee's immediate supervisor is the Executive Director, the appeal process will begin with Step 3.

2.    The Department Director will investigate the circumstances and issue a written decision regarding the action taken within seven (7) calendar days of completing the investigation.

3.    If the employee is not satisfied with the Department Director's decision, he or she may appeal in writing to the Executive Director within seven (7) calendar days of receipt of the Department Director's decision.

4.    The Executive Director will review all available facts concerning the disciplinary or corrective action and issue a written decision within seven (7) calendar days of completing the review.  In addition to reviewing all information submitted  the

Executive Director may further investigate any other relevant circumstances prior to issuing a written decision.

If the Executive Director is the appealing employee's immediate supervisor, the investigation and first level decision shall be made by the Executive Director.

5.    In cases of demotion, discharge, or suspensions in excess of forty (40) hours, if the appealing employee is not satisfied with the decision of the Executive Director, the employee may appeal to an external arbitrator. Oral and written reprimands and suspensions of forty (40) hours or less may not be appealed to arbitration. The parties shall attempt to agree as to the source of an arbitrator. The University of Nevada, Reno, Center for Alternate Dispute Resolution; the State Bar of Nevada; the Nevada State Labor Commissions list of arbitrators; or other mutually agreed upon arbitration service may be considered.

When the arbitration service to be utilized is selected, the organization shall be contacted by the Regional Transportation Commission and a list of arbitrators obtained. The final selection of the arbitrator shall be made by mutual agreement of the parties or by alternate striking of names until only one (1) name remains. The order of striking shall be determined by coin toss. A hearing shall be scheduled at the soonest reasonable time. Sincere effort shall be made to hold hearings within thirty (30) calendar days of selection of an arbitrator. Time frames may be extended by written agreement.

The procedure for the conduct of the arbitration, including efforts to vacate, modify, correct, appeal, or request a new hearing, and the payment of costs of arbitration shall be in accordance with the Uniform Arbitration Act, as set forth in Nevada Revised Statutes 38.015 - 38.205, inclusive.

The employer shall provide any employee who is eligible to demand arbitration with a current copy of the Uniform Arbitration Act.

# XIV. PROHIBITIONS AND PENALTIES

## 14.1   Incompatible Activities: Prohibitions

Employees shall not engage in any employment, activity or enterprise which is inconsistent, incompatible or in conflict with their duties as employees of the Regional Transportation Commission or with the duties, functions or responsibilities associated with the Regional Transportation Commission including, but not limited to:

1. The use for private gain or advantage of Regional Transportation Commission time, facilities, equipment, and supplies, or the badge, uniform, prestige, or influence of their position of employment.

2. The receipt or acceptance by employees of any money or other consideration from anyone other than the Regional Transportation Commission for the performance of an act which the employees would be required or expected to render in the regular course or hours of their employment or as part of their duties as employees.

3. The performance of an act in other than their capacity as employees, which act may later be subject, directly or indirectly, to control, inspection, review, audit, or enforcement by such employees or the department by which they are employed.

## 14.2   Incompatible Activities: Designation

Each Appointing Authority may determine and describe in writing additional specific activities which, for employees under his or her jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as employees, and shall provide a copy to each employee.

## 14.3   Political Activity

Employees shall have the right to vote as they choose and to express their political opinions on all subjects without recourse, except that no employee shall:

1. Directly or indirectly solicit or receive, or be in any manner concerned in soliciting or receiving, an assessment, subscription, contribution, or political service, whether voluntary or involuntary, for any political purpose from anyone on any employment list or holding any position in the service of the Regional Transportation Commission.

2. Engage in political activity during the hours of his or her Regional Transportation Commission employment with the purpose of improving the chances of a political party or individual seeking office, or at any time engage in political activity for the purpose of securing preference for promotion, transfer or salary advancement.

3. While off duty, engage in political activity to an extent that it impairs the employee's attendance or efficiency as an employee.

4. As an employee in a department administering Federally aided programs, engage in political activities at any time which are forbidden by Federal law.

14 4    Prohibition Against Discrimination

1.    Discrimination against any person in recruitment, examination, appointment, training, promotion, retention, or any other personnel action because of political or religious opinions or affiliations, race, national origin, disability, age, sex, sexual orientation, or any other non-merit factor is prohibited.

2.    Any person aggrieved under this Section may appeal any adverse action to the Executive Director. The Human Resources Administrator shall convene a hearing to hear the appeal, and the decision of the Executive Director shall be final and binding.

## XV. BENEFITS

The Regional Transportation Commission offers several employee benefits in addition to paid leave. Benefits listed below are available to employees as noted.

15.1   Public Employees' Retirement System of Nevada (PERS)

In accordance with state law, the Regional Transportation Commission shall pay one hundred percent (100%) of the amount required by the Public Employees' Retirement System of Nevada (PERS) for contribution to the retirement account of each Regional Transportation Commission employee eligible for membership in the System.

15.2   Group Insurance Plans

1.   Regional Transportation Commission employees are eligible to participate in the group health, life, vision, and dental insurance plans which the Regional Transportation Commission offers. Employees are eligible after ninety (90) days of service. The Regional Transportation Commission currently pays 100% of the premium for all full-time employees.   Part-time employees are eligible to participate by paying fifty percent (50%) of the premium.  The RTC will pay the remaining fifty percent (50%) of the premium.   The Regional Transportation Commission will not be obligated to pay any premiums attributed to an employee's dependents.

2.   The Regional Transportation Commission will pay the insurance premium for full-time employees and 50% of the premium for part-time employees taking a leave of absence in accordance with the Family and Medical Leave Act of 1993 (FMLA) for the twelve (12) weeks of leave required in the Act. Employees on FMLA leave will be required to pay for any dependent coverage. Employees who remain on leave in excess of twelve (12) weeks may continue in the insurance plan by paying their own premium during any leave in excess of twelve (12) weeks. If dependents are insured and the employee fails to pay the required premium, dependent coverage will terminate.  If the employee drops insurance coverage, the normal ninety (90) day waiting period for renewing coverage will be required.

If the employee fails to return to work after taking Family and Medical Leave Act of 1993 (FMLA) leave for reasons other than the continuation, recurrence, or onset of a serious health condition that would qualify for FMLA leave or other circumstances beyond the employee's control, the employee is responsible to repay the Regional Transportation Commission for the premiums paid for health coverage during FMLA leave.

3.   Employees granted a leave of absence without pay for reasons other than Family and Medical Leave Act of 1993 ( FMLA) may continue to participate in the group insurance plan at their own expense during the duration of their approved leave. If the employee elects not to maintain coverage during the leave, upon returning to service, the employee shall become eligible for the Regional Transportation Commission sponsored group insurance plan after ninety (90) days service as specified above.

4.   Effective September 5, 1991, regular, full-time employees who retire from the Regional Transportation Commission and meet the established requirements are eligible to participate in the group health insurance plan in effect at that time with a portion of the premium paid by the Regional Transportation Commission.

In order to qualify, a person must meet the requirements for retirement under the Public Employees' Retirement System of Nevada (PERS).

Regional Transportation Commission employees with a minimum of ten (10) years of continuous service, who immediately begin drawing retirement benefits from the Public Employees' Retirement System of Nevada (PERS) upon leaving Regional Transportation Commission employment, are eligible to participate in the group health insurance then in effect.  For purposes of calculating eligibility for retiree insurance benefits, the number of years an employee has been in the service of the Regional Transportation Commission shall include all periods of continuous service after the date the employee was last hired as a regular Regional Transportation Commission employee, inclusive of years of service with Washoe County or Transit Management of Washoe immediately prior to July 1, 1985, for Regional Transportation Commission employees as of July 1, 1985, and former periods of service if each applicable period of separation may be bridged pursuant to the bridging provisions listed below.

A period of separation may be bridged to increase the number of years of service under the following circumstances:

(a)   A period of separation which resulted from a layoff may be bridged to increase the number of years of service if the employee was subsequently rehired pursuant to Section 11.8.

(b)   A period of separation may be bridged if the employee was rehired within one (1) year after the date of commencement of the separation and the employee has been in the continuous service of the Regional Transportation Commission for one (1) year after the date the employee was rehired.

For employees who meet these requirements, the Regional Transportation Commission will contribute fifty percent (50%) of the health insurance premium for retirees with at least ten (10) years of service, seventy-five percent (75%) of the premium for retirees with at least fifteen (15) years of service, and one hundred percent (100%) of the premium for retirees with at least twenty (20) years of service.

Part-time employees reaching the milestones of ten, fifteen, and twenty years of service would be eligible for the benefit described above for retiring employees under the same requirements and conditions, except that the contribution would be prorated by 50%.  Specifically, 25% of the premium would be contributed for at least 10 years of part-time service, 37.5% for at least 15 years of part-time service, and 50% for at least 20 years of part-time service.

The payments specified above will be made in accordance with and are subject to all applicable laws in effect at the time of the employee's retirement, and are contingent upon the employee being medically eligible to be reinstated into the

Regional Transportation Commission's retiree health insurance program if there has been a break in coverage under the Regional Transportation Commission's health plan.

15.3    Washoe Credit Union

Employees of the Regional Transportation Commission may participate in the Washoe Credit Union. Payroll deduction is available.

15.4    Deferred Compensation

Employees may participate through payroll deduction in their choice of deferred compensation programs offered by the Regional Transportation Commission. The RTC will contribute to each employee's deferred compensation program, as matching funds, up to 1% of each employee's annual base salary.

15.5    Tuition Reimbursement

Employees wishing to continue their education and/or pursue additional training that relates to their employment at the Regional Transportation Commission may apply for tuition and textbook reimbursement.  Prior approval is required, and a grade of "B" or better is necessary for reimbursement of tuition and textbooks. The maximum benefit is one thousand dollars ($1,000) per fiscal year.

15.6    Employee Assistance Program (EAP)

Employees and their immediate families are eligible to use the services provided by the Regional Transportation Commission's Employee Assistance Program.  This benefit offers professional counseling with the first five (5) visits annually at no charge to the employee. The Employee Assistance Program is strictly confidential, and use of the program does not jeopardize an employee's position at the Regional Transportation Commission.

15.7    IRS 125 Flexible Benefits Plan

Employees are eligible to join the IRS 125 Flexible Benefit Plan on the first (1st) of the month following ninety (90) days employment. This plan allows employees to set aside pre-tax dollars to fund expenses such as dependent care, health insurance premiums, and unreimbursed medical expenses. This benefit is through payroll deduction with open enrollments year y.

15.8    Long Term Disability Insurance

Full-time employees are automatically enrolled in a long-term disability plan on the first (1st) of the month following ninety (90) days employment.  This plan pays up to two-thirds (⅔) of an employee's salary after ninety (90) days disability.

15.9    Severance Pay

Employees in the unclassified service serve at the pleasure of the Executive Director. Unclassified employees who are terminated for reasons other than misconduct or unsatisfactory performance of their duties shall be entitled to severance pay.  Severance pay shall consist of one (1) month's pay for each year of service (prorated) up to a maximum of six (6) months.

15.10   Direct Deposit of Payroll Checks

Employees may elect to have their payroll checks directly deposited in the Financial Institution of their choice.

15.11   Computer Purchase Program

Eligible employees have access to an interest-free loan program to assist them in the purchase of personal computer systems similar to what the employees use in performing their duties. Employees participating in this program are required to sign a promissory note with payments made through payroll deductions.

15.12   Health Fair

Employees may participate in an annual employee Health Fair which provides personalized information regarding health risks.

15.13   Employee Wellness Program

Employees who wish to join a local health club may arrange for the RTC to pre-pay the annual fee, with employee reimbursement made through payroll deductions.  Employees participating in this program must sign a promissory note.

15.14   Citifare Bus Pass

Employees may use their RTC Identification Card to ride on any Citifare Bus without cost.

## XVI.  MANAGEMENT RIGHTS

16.1    Management Rights

The Regional Transportation Commission retains the sole right and authority to operate and direct the affairs of the Regional Transportation Commission in all its various aspects.  Among these rights are the Regional Transportation Commission's right to determine its mission and set standards for service offered to the public; to direct the working forces; to plan, direct, control, and determine the operations or services to be provided by the employees of the Regional Transportation Commission; to assign and transfer employees; to hire, promote, and demote employees; to suspend, discipline, or discharge employees; to lay off employees due to lack of work or for other legitimate reasons; to establish and enforce rules and regulations; and to change methods, equipment or facilities.

16.2    Savings Clause

Invalidation of any part, rule, or section of the Regional Transportation Commission Personnel Rules shall not affect the validity of other sections.  If contradictions exist between the Regional Transportation Commission Personnel Rules and an employee handbook, the Personnel Rules shall take precedence.  If contradictions exist between the Regional Transportation Commission Management Policies and the Regional Transportation Commission Personnel Rules, the Personnel Rules shall take precedence.

# PERSONNEL RULES
## INDEX

PAGE

Absence Reporting . . . . . . 51
Absence Without Leave . . . . . . 51
Advanced Sick Leave . . . . . . 46
Anniversary Date; Adjustment . . . . . . 51
Anniversary Date; Defined . . . . . . 1
Appeal; Demotion  Discharge, Suspension . . . . . . 67
Appeal; Refusal to Examine or Certify . . . . . . 29
Appeal; Salary Decision . . . . . . 20
Appeal; Transfer . . . . . . 31
Appeals and Hearings . . . . . . 67
Applicant Selection (see Exams) . . . . . . 23
Appointing Authority; Defined . . . . . . 1
Appointments . . . . . . 31
Approval - Sick Leave . . . . . . 46
Assistance Programs (Counseling), Employee . . . . . . 73
Attendance and Leaves . . . . . . 39

Benefits . . . . . . 71
Break in Service; Defined . . . . . . 1

Call-Back; Defined . . . . . . 1
Call-Back Pay . . . . . . 19
Candidate Selection . . . . . . 29
Career Incentive Plan . . . . . . 21
Catastrophic Sick Leave Bank . . . . . . 47
Certification of Eligibles, Names . . . . . . 29
Certified Lists . . . . . . 27
Class; Defined . . . . . . 2
Class Specification; Defined . . . . . . 2
Class Specification; Interpretation . . . . . . 13
Classification Plan . . . . . . 9
Classification Plan; Defined . . . . . . 2
Classification Process; Defined . . . . . . 2
Classified Service . . . . . . 6
Compensation . . . . . . 15
Compensation; Deferred . . . . . . 73
Compensation; Holidays . . . . . . 40
Compensation Plan . . . . . . 15
Compensatory Time . . . . . . 20
Confidential Records . . . . . . 35
Conflict of Interest . . . . . . 69
Corrective Action, Discipline . . . . . . 63
Credit Union . . . . . . 73

Date of Hire; Defined . . . . . . 2
Deferred Compensation . . . . . . 73
Definition of Terms . . . . . . 1

Demotion; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Demotion; Involuntary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Demotion, Salary Upon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Demotion; Voluntary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Disabled Persons; Employment and Examination of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Disabled Persons; Temporary Appointments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Discharge, Procedure For . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Discipline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Discipline, Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Discrimination, Prohibition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Educational Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Eligible Lists, See Section V, Certified Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Eligibles; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Employee Assistance Program (EAP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
Employee, Employer; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Employee Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Employment of Persons with Disabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Evaluation of Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Examination of Persons with Disabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Examinations, Promotional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Family and Medical Leave Act of 1993 (FMLA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Flexible Benefits Plan (Sec. 125, IRS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
Full-Time Employee; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Group Insurance Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

Hearings; Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Holidays; Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Insurance, Long Term Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
Insurance, Nevada Industrial Insurance System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Insurance Plan; Group . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
IRS 125 Flexible Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Journey Level; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Jury Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Layoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Leave of Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Leave, Worker's Compensation Injury or Illness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Leaves, Attendance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Longevity, See Career Incentive Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Long-Term Disability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Management Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Merit Increase Date; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Merit Personnel Resolution; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Merit Personnel System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Merit Salary Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Merit System; Establishment of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Military Service Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Nepotism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Overtime; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Part-Time Employee; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Part-Time Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Pay Band, Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Pay Band; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Payment of Benefits, Separation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Payment, Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Payment, Vacation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Performance Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Performance Evaluation; Probation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Performance Evaluation, Unsatisfactory Notice Appeal . . . . . . . . . . . . . . . . 67
PERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
Personal Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Personnel Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Personnel Officer; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Political Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
Position Classification, See Section II, Classification Plan . . . . . . . . . . . . . . . 9
Position; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Probationary Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Probationary Period; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Probationary Period, See Section VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Prohibitions and Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
Promotional Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Promotion; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Promotion; Probationary Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Public Employees' Retirement System of Nevada (PERS) . . . . . . . . . . . . . . . 71

Rates; Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Rates; Salary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Rebanding; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Reclassification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Reclassification; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Records, Confidential . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Regional Transportation Commission; Defined . . . . . . . . . . . . . . . . . . . . . . . 4
Regular Employee; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Rehire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Rehire, Rate Upon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Rehire, Vacation Accrual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Rehire, Veterans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Reprimand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Resignation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Roster of Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
RTC; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
RTC Employee; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Salary Adjustment; Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Salary Adjustment; Special . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Salary, Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Salary Pay Band . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Salary, Rates - See Application of Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
Selection of Candidates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Separations; Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Severance Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Specifications, Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Suspension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63, 64, 65

Temporary Appointments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
TMW; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Transfer; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Transfer; Kinds; Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Transfer; Probation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Tuition Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Unclassified Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Underfilling; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Underfilling of Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Vacation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
Veterans; Rehire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Volunteer; Emergency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Warnings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Workers' Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Work Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Work Week; Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5